**STATE of Missouri, Respondent,**

**v.**

**Murray HARRIS, Appellant.**

**No. 53139.**

Supreme Court of Missouri,
Division No. 1.

June 10, 1968.

Norman H. Anderson, Atty. Gen., O. Hampton Stevens, Asst. Atty. Gen., Jefferson City, for respondent.

Henry D. Pahl, Jr., St. Louis, for defendant-appellant.

HOUSER, Commissioner.

Appeal from a judgment of the Circuit Court of the City of St. Louis overruling a motion for a writ of error coram nobis, treated as a motion to vacate judgment and sentence under Criminal Rule 27.26, V.A.M.R.

It appears that on January 28, 1966 Murray Harris was found guilty of receiving the earnings of a prostitute and sentenced to imprisonment for two years. Two prostitutes testified for the State and against defendant. A motion for new trial on the basis of newly discovered evidence affecting the reliability of the testimony of one of the prosecuting witnesses was filed and overruled. A notice of appeal was filed but the appeal was later abandoned. On a date not disclosed in this record, but apparently after the expiration of the time for the filing of a motion for new trial, a second motion for new trial was filed, based upon affidavits of the two prosecuting witnesses apparently contradicting their testimony at the trial; denying the specific acts of prostitution alleged and denying payment of money to defendant. These affidavits, "lodged" but not filed with the circuit clerk April 13, 1966, were not introduced in evidence at the 27.26 hearing and have not been filed in or exhibited to this Court. The trial court ruled that the time for filling a motion for new trial had passed.

Thereafter, on May 10, 1967, defendant filed a motion for writ of error coram nobis (the basis of the present proceeding) claiming that he was convicted on perjured testimony, to the knowledge of the circuit attorney, and thus was denied due process of law. The motion alleged that the affidavits of witnesses A and B, "now a part of the Court file," relate the facts to which they swore under oath at the trial, and that the affidavits "show on their faces that said testimony of the witnesses, (A and B), at the trial of the Defendant was false and

perjured; that said witnesses were coached, coerced, forced and threatened to testify to the false facts as aforesaid."

When the motion came on for hearing defendant's counsel stated that witness A could not be located, but that witness B was under subpoena. B took the stand. The trial judge asked B if she had an attorney and upon being informed that she had no attorney refused to hear the motion, stating that the witness would have to have an attorney, and "* * * if you testify here, madam, the Court's duty will be to certify this record to the Circuit Attorney for action." The next morning the witness B appeared with an attorney representing her and the motion was heard. Defendant's counsel placed B on the stand. At the outset, after a few preliminary questions, B's attorney stated that he had advised B not to make any statements which would tend to incriminate her. The judge said that he wanted B to testify; that the affidavit did not rise to the dignity of testimony in court and was inadmissible, but that he would "sustain the motion" of B's attorney with reference to incrimination. Defendant's attorney nevertheless was permitted to inquire of B with reference to what went on in the circuit attorney's office before she testified before the grand jury. B testified that she was taken to that office by two police officers who told her that the circuit attorney's office wanted her to make a statement; that she had been mentioned in a case where a man was arrested; that an assistant circuit attorney came into the office and said, "Young lady, we understand you have been in trouble before with the Juvenile authorities." B answered "Yes sir." He said "Well, you know you are mixed up with this now, you know that, too?" B answered "Yes, I see I am involved." Then the assistant circuit attorney said, "Well, I just want you to know, young lady, if you don't cooperate with us to the fullest extent and tell us what you know and do as we say, this matter will be presented to Judge McMillian of the Juvenile Court, and he will take

further steps." When asked whether the assistant circuit attorney told her anything to say before the Grand Jury, B stated that they asked her "all the questions" in the office; told her that similar questions would be asked before the Grand Jury; that two assistant circuit attorneys questioned her before the Grand Jury, going over the same questions she had answered in the office before going before the Grand Jury. Asked, "Did they ask you to change any of your answers before you went before the Grand Jury," B answered, "I don't remember."

B testified that thereafter she and A appeared several times in the office of the circuit attorney, before the trial of defendant. On one occasion apparently A told the assistants that she was not going to testify and they were "pretty mad" at A. One of the assistants "stormed out of his office and he says 'She is not going to be going home, lock her up,' real mad." B testified that she and A were in a room together with an assistant circuit attorney on the morning of the trial of defendant at which time the assistant went over the statements A and B had made in the Grand Jury room. The assistant circuit attorney would ask the girls a question. If they answered "in a different way than we said in the Grand Jury he would throw his arms up in the air and say, 'That is not the way you are supposed to answer the question.'" A was crying. B further testified as follows: "He went over her [A's] whole statement two or three times and she sat there and didn't know what to say to him, and he says, 'Now, this is how it's going to be, his lawyer will say this and I'm going to object, of course, and his lawyer will say this and don't be afraid, we are with you all the way, and whatever in here I think he shouldn't ask you, I will object to that, also' and it was just— oh, it was awful, just all he did. * * * if we forgot exactly the words we used in the Grand Jury room, that was like we were going to be arrested." A and B were not represented by counsel at that time.

Objections were sustained to questions asked B whether A or B had lied while on the stand in the trial of defendant's case. B's lawyer objected to these questions on the ground that the answer might tend to incriminate her. Objection was sustained to the question whether B made a statement in the lawyer's office contradictory to her testimony at defendant's trial. On advice of counsel B stood on her constitutional right not to testify on these matters. Defendant's counsel asked B if she appeared at his office on April 4, 1966 and signed a certain document (apparently an affidavit repudiating her testimony at defendant's trial). Following a colloquy on the matter of incrimination defendant's counsel asked B if the signature to the document entitled "Statement of B" (3 pages of questions and answers) was hers, and she answered "Yes." B recalled signing it at defendant's attorney's office. She said she went there voluntarily; that no one paid her anything for making the statement; that she was questioned in the presence of the attorney for defendant, his secretary and another attorney; that the secretary took notes of the conversation and a couple of days later the typewritten questions and answers were presented to her in transcript form for inspection and signature; that she signed it before a notary public, swearing that the statements were true and accurate to the best of her knowledge, information and belief. Counsel then began to read from the statement. After a few preliminary questions and answers were read counsel for the state objected to the reading of the affidavit, and the objection was sustained. The state introduced no evidence. The court found that the witnesses A and B "were not coached, coerced, forced or threatened to testify falsely at the trial of the defendant, and that said testimony therefore, was not false," and overruled the motion "under Supreme Court Rule 27.26." This appeal followed.

Appellant's first point: "The Trial Court erred in denying Defendant's second motion for new trial as it was based on new evi-dence not available at the original trial or at the time of making the first motion for new trial." In support of this assignment appellant argues that although he is armed with affidavits of the prosecuting witnesses showing that defendant was convicted on perjured testimony, he has repeatedly been thwarted in his attempts to obtain a full and fair hearing of this new evidence; that these affidavits constitute part of the record in the present appeal; that these affidavits formed the basis of his second motion for a new trial; that notwithstanding the motion for new trial was not timely filed, it should have impelled the court to grant a new trial on its own motion under Criminal Rule 27.19(a)(1) ["for newly discovered evidence"], and that refusal to consider the merits of the newly discovered evidence "exceeds the bounds of the court's discretionary power."

█ It would be patently unjust for a trial judge to refuse to grant a new trial in any case in which an accused was found guilty of a crime on the basis of false testimony, and the court "if satisfied that perjury had been committed and that an improper verdict or finding was thereby occasioned," Donati v. Gualdoni, 358 Mo. 667, 216 S.W.2d 519, 521, would be under a duty to grant a new trial. That is to say, "[w]here it appears from competent and satisfactory evidence that a witness for the prosecution has deliberately perjured himself and that without his testimony accused would not have been convicted, a new trial will be granted." 24 C.J.S. Criminal Law § 1454, pp. 188, 189. The difficulty with appellant's argument is that movant has not satisfied the trial court or this Court that perjury was committed in the trial of the case, and that an improper verdict or finding was occasioned thereby. Supreme Court Rule 78.01. The affidavits are not a part of the record on this appeal. We take judicial notice of our records, however, and we have read photostatic copies of these affidavits appearing in the files in the original appeal. A stated in her affidavit that she had never engaged in pros-

titution at defendant's address and had no contact with defendant except on the day she moved in; that her testimony about twelve acts of prostitution at that address "were not true at all," and that she was coached to say this in the office of the circuit attorney and coerced into testifying before the grand jury by threats that if she refused she would be charged with possession of narcotics and "there would be a lot of publicity about the whole thing," and her parents would be the first to find out. B's affidavit is confusing. In it she states that A was *not* telling the truth "when she stated in the record that she was not then engaged in prostitution"; that to B's knowledge A *was* engaged in prostitution; that B knew A "got the money she had from hustling." Although not favored with a copy of the transcript at the original trial we must assume that it was a part of the state's case to show that A was engaging in prostitution. B's affidavit, however, indicates that both she and A testified at the trial that A was *not* then engaged in prostitution, and that these were not true statements.

From a reading of the affidavits we do not think that the trial court's action in denying the second motion for a new trial was clearly erroneous, for the reason that the statements made in the affidavits are not convincing; they are conclusionary, and do not satisfy the judicial mind of their truth. The affidavits do not carry the compelling ring of truth. B's affidavit that the statements of A "were lies" is not convincing. There is no reason for us to accept what the affidavits say in preference to what affiants said when they testified at defendant's trial. Their testimony at the trial was subjected to the test of cross-examination. What affiants said in their affidavits was not thus tested.

"Recantation by a witness called on behalf of the prosecution does not necessarily entitle accused to a new trial. The question whether a new trial shall be granted on this ground depends on all the circumstances of the case, including the testimony of the witnesses submitted on the motion for the new trial, and its determination is left to the sound discretion of the trial court free from interference except for abuse of such discretion. Moreover, recanting testimony is exceedingly unreliable, and is regarded with suspicion; and it is the right and duty of the court to deny a new trial where it is not satisfied that such testimony is true. Especially is this true where the recantation involves a confession of perjury." 24 C.J.S. Criminal Law § 1454 k., p. 185. The court must be reasonably satisfied of the truth of the recanting testimony. In this case there was no recanting testimony, and the trial court was not obliged to and evidently did not accept the affidavits at face value. There was no error in not granting a new trial on the ground that the conviction was based upon perjury.

Appellant's second point: "The Trial Court erred in that it effectively advised or instructed the witness (b) not to give testimony contradictory to her testimony at the original trial." It is argued that the remark made by the trial judge the first time this motion came before the court (that if she testified the court's duty would be to certify the record to the circuit attorney "for action") intimidated B and amounted to an abuse of judicial discretion. It is further argued that the action of the court, following the open court declaration by B's attorney that she not answer questions concerning the truth of her testimony at the trial, in stating that if B wanted to answer over her attorney's objection "I can't countenance a thing like that," amounted to an instruction to the witness not to answer the pertinent questions. The court also stated "She [B] hasn't indicated to me she wants to violate her obligation to her lawyer." Conceding that the court may have had an obligation to make sure that B was aware of her rights and that she could not be compelled to testify, appellant urges that the court had a corresponding duty to seek the truth and to advise B that morality and justice required that she correct any injustice which might have been

caused by perjured testimony previously given. Appellant further suggests that A and B were very young women (B was 16 years old) and that both of them were subject to prosecution for prostitution, and therefore were particularly subject to influence and intimidation by the prosecuting officials.

■■ We cannot take exception to the conduct of the trial judge in this respect. Under the circumstances confronting the witness B (young, impressionable, without counsel, ignorant of her rights and likely unappreciative of the possibilities of a prosecution for perjury) it was wise and proper for the court to insist that she be represented by counsel. A thorough reading of the record does not disclose that the trial judge intimidated the witness or that his comments constituted an instruction to the witness not to answer pertinent questions. On the contrary, the record indicates that while the judge preferred that she testify ("I want this lady to testify. * * * I want her to testify, if she's going to."), he honored her desire not to answer, a decision which we find that she made of her own free will, after advice of counsel, and not because of any pressure or undue influence coming from the bench.

Appellant's third point: "The factual determination of the Trial Court that the witnesses were not coached, coerced, forced or threatened to testify falsely at the trial of the Defendant and that said testimony therefore, was not false was clearly erroneous and the conclusion of law that there were no grounds for granting a new trial was in error."

■ It is first argued that this Court should adopt a rule of law that a new trial will be granted where a principal witness claims the constitutional privilege against self-incrimination under these circumstances. The rule contended for, under

which a new trial automatically would be granted when a prosecuting witness, asked on motion for new trial questions which would reveal that she had perjured herself at the trial, invoked her constitutional privilege, would be arbitrary, susceptible to great abuse, and would leave nothing to the sound discretion of the trial judge. New trials based on charges of perjury are not to be granted lightly, or on the basis of an inference drawn from the fact alone that the witness accused of perjury invoked her constitutional privilege, but only when the trial court is convinced from competent and satisfactory evidence that perjury has been committed by a witness and that an improper verdict or finding resulted therefrom.[1] Perjured testimony is illegal testimony, and the court may grant a new trial when illegal testimony has been admitted, Criminal Rule 27.19(a)(1), but the mere fact that a prosecuting witness recants her testimony does not necessarily entitle a convicted defendant to a new trial. 24 C.J.S. Criminal Law § 1454 k., p. 185.

■ Appellant claims that the court's factual determination that the witnesses were not coerced, etc. was erroneous because the affidavits "on file," and the fact that B invoked the privilege, "provide compelling *evidence* that the testimony of both witnesses at the original trial was false." We disagree. The trial court's determination that the witnesses were not coached or coerced is sufficiently supported, and its refusal to set aside the sentence and judgment on the specified ground is not clearly erroneous.

■ By this opinion we do not intend to relax or depart from the rule that in order to vacate a judgment claimed to have been procured by false testimony under Criminal Rule 27.26 it is a requirement that it be alleged and proved that the State knowingly used false testimony or know-

---

1. Supreme Court Rule 78.01: " * * * The court may award a new trial * * * in any case where * * * the court is satisfied that perjury * * * has been committed by a witness, and is also satisfied that an improper verdict or finding was occasioned by any such matter(s) * * *."

ingly failed to correct testimony which it knew to be false. State v. Statler, Mo. Sup., 383 S.W.2d 534; State v. Garton, Mo.Sup., 396 S.W.2d 581; State v. Sims, Mo.Sup., 391 S.W.2d 833 [3]; State v. Eaton, Mo.Sup., 280 S.W.2d 63; State v. Eaton, Mo.Sup., 302 S.W.2d 866, cert. denied 355 U.S. 912, 78 S.Ct. 338, 2 L.Ed. 2d 273; State v Turner, Mo.Sup., 353 S.W. 2d 602; State v. Ninemires, Mo.Sup., 306 S.W.2d 527; Holt v. United States (C.A. 8), 303 F.2d 791; Taylor v. United States (C.A. 8), 229 F.2d 826. Our holding that the rulings of the trial court are not "clearly erroneous," which is the test, Crosswhite v. State, Mo.Sup., 426 S.W.2d 67, adopted April 8, 1968; State v. Maxwell, Mo.Sup., 430 S.W.2d 152, adopted concurrently herewith, are entirely consistent with the foregoing rule, which we recognize and reaffirm.

The judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.