THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EARL F. JONES, Defendant-Appellant.

(No. 11922;

Fourth District—March 12, 1975.

John F. McNichols and J. Daniel Stewart, both of State Appellate Defender's Office, of Springfield, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (Walter F. Farrand, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

On February 4, 1971, Earl F. Jones was found guilty by a jury of the murder of Joseph Anthony Mattera and later sentenced to the penitentiary for a term of 25 to 60 years. On appeal, he contends that the trial court erred in denying his two motions for a new trial. One motion was on the basis of newly discovered evidence. The other motion complained of the giving, over defendant's objection, of an instruction defining the offense of murder without reference to self-defense.

In his testimony, defendant admitted shooting Mattera but maintained that he did so in self-defense. He stated that on March 30, 1970 at about 5 A.M. after spending the previous afternoon and evening drinking in taverns, he, Timmy Wright and Larry Walsh, also known as Messenbrink, drove to the 400 block on East Jefferson Street in Springfield and parked near the apartment of Jackie Hornstein. Defendant had not expected to see Mattera but noticed him in a convertible behind them. The three walked up to the car and defendant told the others to go to the apartment. Defendant asked Mattera to go to breakfast but Mattera said "* * * might as well get this over with now," and pulled out and pointed a pistol at him. Defendant heard a click but no gun was fired. He then jumped back, but Mattera opened the door and while continuing to point the gun with the right hand, worked a lever on the gun with his left. Defendant then drew a gun he had in his belt and shot Mattera aiming at the shoulders. Mattera then drove off west on Jefferson Street to Fourth Street, where he turned north. Defendant went to the apartment for a few minutes, then left driving by St. John's Hospital, then to a friend's house to get two guns, then to several other places for the next few hours. That evening he went to the police station and told officers there that he was home all of the previous night. A week or so later he left for California but while there was in touch with Springfield law-enforcement officials about other matters.

Walsh testified for the defendant stating that when defendant asked Mattera to go to breakfast, Mattera started cursing. Walsh further said that as he approached Mattera's car, he saw a gun on the front seat. He was not asked whether he saw the shooting. Walsh was impeached by his admissions that he was serving under a robbery conviction in California at the time and that when earlier questioned by Detective Bob

Smith, he had said, "Look, Bob, you ought to understand the position you're putting me in, let's put it this way, what if you were me, how would you feel if what you said would put Earl in the electric chair."

The evidence was undisputed that Mattera drove from the scene to St. John's Hospital, crashing into a wall near the emergency room. He was removed from the car, severely wounded from the gunshot. Several persons had occasion to look through the car and found no gun in it. Police were also unable to locate a gun at the scene. After being hospitalized in Springfield, Mattera was removed to a hospital in Peoria where he died of infection on August 7, 1970. Defendant does not contest the sufficiency of the evidence to prove the causal connection between the gunshot wounds and the death. Two other items of defendant's evidence should be noted. Defendant mentioned in his testimony that in January of 1970, Pete Hornstein, in the presence of Mattera, had shot the defendant and that $4000 was taken from him. Floyd King testified that he saw Mattera earlier in the day in question with a gun in his belt.

People's witness Timmy Wright testified that as he, defendant and Walsh were leaving their car to approach Mattera, defendant "cocked" his pistol and "put it into his belt, or pocket or somewhere." Wright stated that from his position he could see only the top part of the front seat of Mattera's car. He started up to the apartment when told to do so and heard a shot but continued into the apartment. He also said that later in the apartment defendant talked of a gun jamming. Wright's testimony was impeached by his admission and the testimony of many witnesses that he had taken quite a few drugs at the time of the occurrence and by his admission that upon being interrogated by police after the incident, he gave an untrue statement.

Earl Harris, a bartender, testified for the People that defendant had come into his place of work on the morning in question to leave some guns and when returning to get them that afternoon had said he "got even with Tony."

Defendant supported his motion for a new trial on the basis of newly discovered evidence with the testimony of witnesses, two written statements of Alvin Greenwood and the offer of signed petitions asking that defendant be given a new trial. In denying the motion, the trial court ruled that the testimony of Marvin Hornstein was not newly discovered and that the other evidence was not of "such conclusive character that would probably change the result on retrial." He also refused to consider the petitions.

■■ Defendant does not directly challenge the trial court's refusal to consider these petitions but intimates without citing authority that the fact that six of those who signed purport to have been jurors at the trial

should be considered by this court. For us to do so would be clearly improper. Even when affidavits or sworn testimony by jurors which tend to impeach their verdict are presented to trial court, the proper practice is generally to refuse the offer. (*People v. Pulaski*, 15 Ill.2d 291, 155 N.E. 2d 29, *cert. denied*, 359 U.S. 997.) These documents have no standing in either the trial or reviewing court.

Motions for new trials on the grounds of newly discovered evidence are closely scrutinized. The new evidence must:

> "(1) appear to be of such a conclusive character that it will probably change the result if a new trial is granted, (2) have been discovered since the trial, (3) be such as could not have been discovered before the trial by the exercise of due diligence, (4) be material to the issue, and (5) not merely cumulative of the evidence offered on the trial." *People v. Silvia*, 389 Ill. 346, 352, 59 N.E.2d 821. See also Annot., 92 A.L.R. 2d 992, 993 (1963).

Since defendant was the only eyewitness to the shooting to testify at the trial, most of the evidence was circumstantial. In attacking defendant's version in closing argument, the prosecution emphasized that no gun was found in Mattera's car at the hospital or in the street near the scene. Offered as "newly discovered evidence" to explain what happened to the gun was the testimony of Richard Long and Marvin "Pete" Hornstein. Long's version was that on the morning of the shooting he saw Mattera's car near the apartment in question. It stopped with its horn honking and tires squealing and Mattera threw a pistol and box of pills to him, yelled "here" and drove on. Long said that he then placed the gun in a nearby waste barrel. Hornstein testified that Long told him of this and that he, Hornstein, that weekend, took the gun from the barrel and threw it into Lake Springfield. Both witnesses also testified that they had conversations with Mattera while he was in the hospital wherein he admitted that he had tried to shoot defendant but that his gun jammed.

Hornstein had told defendant's counsel of his version prior to trial but at the time of trial he was hospitalized for treatment for drug addiction and not in condition to testify. Long had told his story to defendant prior to trial, and defendant had relayed the information to his counsel who had interviewed Long at the penitentiary. There Long refused to tell defendant's counsel "anything." Both witnesses had criminal convictions of a type that would subject them to impeachment.

■■ The trial judge correctly ruled that Hornstein's testimony was not newly discovered. The status of Long's is more complicated.

■■ Both defendant and his lawyer knew that Long had made a statement favorable to them and that he was available for subpoena. Since he had refused to talk to counsel, his reliability was questionable.

Whether to call him was a tactical decision and a difficult one. The only change in the situation from time of trial to time of motion was that the witness became more cooperative. His version of the occurrence did not change. This evidence was not newly discovered.

The trial court found Long's testimony not to be of such conclusive character that it would probably change the result on retrial. The witness' reluctance to come forward with his testimony and his criminal record mitigated against weight being given to his testimony. He was not an eyewitness, and the belief of the jury that deceased had a gun at the time of the shooting would not necessarily result in an acquittal. Such a ruling did not amount to an abuse of discretion.

The trial judge made a similar finding with reference to a statement of Alvin Greenwood. The parties stipulated that if present he would testify as set forth in a written statement dated February 9, 1971. They also stipulated that Greenwood's written statement dated February 3, 1971, was shown to defendant and his lawyer on that date. The February 9 statement says that the witness saw the shooting episode while he was standing at the corner of Fifth and Jefferson Streets. It states that "at 5 or 5:30 A.M. on a day in March" in front of the apartment in question, he saw three men get out of one car and approach another, describing the cars. Two of the three men are said to have left leaving the other talking to a man sitting in the second car. The statement further indicates that the man in the street stepped back suddenly as the man in the car pointed a gun at him and worked a lever on the gun, whereupon the man in the street produced a gun and shot the man in the car.

Greenwood's statement related many unusual coincidences and the fact that he had been a cell mate of the defendant. This together with his lateness in coming forth with his story cast doubt upon his credibility. On the other hand, he purported to be an eyewitness and his testimony, if believed, would probably be of such a conclusive character as to change the result of the trial.

■■ We do not have to decide if the trial judge ruled correctly as to this offered evidence being likely to have changed the result of the trial, however, because February 4, 1971, was the last day of the trial. The statement of February 3, 1971, available to defendant during trial, gives the substance of information in the February 9 statement. The defendant and counsel, therefore had knowledge of this evidence during the course of trial and the evidence was likewise not newly discovered.

■■ Howard Beall and Timmy Wright, who had been State's witnesses at trial, testified at the hearing on the same motion, each recanting his testimony at trial. Beall said that while in the apartment in question after the shooting, he heard defendant say that Mattera pulled a gun

and he had to shoot Mattera. At trial Beall had testified that defendant made no statements about the occurrence. The net result of Wright's testimony after cross-examination was that he could not now say that he remembered that defendant cocked his gun before going to Mattera's car. Recanting testimony, as in the instant case, is generally regarded as unreliable. (*People v. Nash*, 36 Ill.2d 275, 222 N.E.2d 473.) Even if this testimony was believed and even if Beall's was admissible, it was not of the type that would likely change the result on retrial. The trial court's ruling in this regard was also proper.

Defendant contends that in cases of this nature, the recent decisions indicate that the nature of the evidence presented is more important than whether the evidence is "newly discovered." *People v. Upshaw*, 58 Ill.App.2d 256, 207 N.E.2d 728, and *People v. Pirovolos*, 126 Ill.App.2d 361, 261 N.E.2d 701, are cited in support of this theory. In *Upshaw*, an eyewitness who allegedly would testify that defendant was not the robber was offered as a witness on a *coram nobis* motion after trial. Prior to trial, the witness' name and his correct address at the time of the robbery were given to defendant, but the witness had left that address and was not located by defendant at the time of trial. The reviewing court forgave defendant any lack of diligence in locating the witness and remanded for a new trial. Similarly, in *Pirovolos*, the witness was listed by the state only by first name, and defendant did not locate him until after trial. At the hearing on the motion for a new trial, this witness testified to a version that supported the defendant's self-defense theory and was contrary to the principal prosecuting witness. He was apparently conceded to be an eyewitness. The judgment was reversed and the cause remanded for a new trial.

■■ In each of those cases the evidence was unquestionably newly discovered and likely to change the outcome. It was easily believable. The only inroad made by these cases upon the traditional standards was to disregard the requirement of diligence. In the case under consideration, the testimony of Hornstein, Long and Greenwood was not newly discovered and that of Wright and Beall was recant. All of it was of questionable belief and little, if believed, was likely to change the result. The request for a new trial on the grounds alleged in this motion was "a matter reposing within the sound discretion of the trial bench." (*People v. Brown*, 125 Ill.App.2d 336, 342, 261 N.E.2d 11.) That discretion was not abused here.

Defendant's other motion for a new trial complained of the giving over his objection of IPI Criminal instruction No. 7.01, which defines the offense of murder without reference to justifiable use of force in defense of a person. The court also gave IPI Criminal instruction No.

24.06 which defines the justification for using such force as a separate instruction and combined IPI Criminal instruction Nos. 7.02 and 25.05 into one issues' instruction which concededly properly listed all the issues and set forth the burden of proof when, as in the case under consideration, there is evidence of justification. Because of the sufficiency of the issues' instruction, defendant contends that the instruction defining the offense of murder was unnecessary and was confusing because of its inconsistency with the issues' instruction in not listing lack of lawful justification as an element of the offense.

■■ The selection of instructions given by the court in this case is that recommended by IPI Criminal instruction "Sample Set of Instructions 27.01 Murder—Confession—Self Defense." Neither instruction No. 7.00 nor No. 24.06 as set forth in IPI Criminal is accompanied by any reference to their being combined in an appropriate case, while the format for instruction 25.05 so indicates with reference to instruction 7.02. Consistent with this method of instructing is the decision of this court in *People v. Campbell*, 13 Ill.App.3d 31, 34, 299 N.E.2d 439, 441, affirming a conviction for aggravated battery. Separate instructions were given defining aggravated battery and justifiable use of force but the issues' instruction combined both elements. The court stated, "No single instruction is required to state all of the relevant law on a single subject, but it is sufficient that the instructions as a whole adequately inform the jury as to the law. (*People v. Mills*, 40 Ill.2d 4, 237 N.E.2d 697; *People v. Jackson*, 116 Ill. App.2d 304, 253 N.E.2d 527.)" The instructions under consideration met that test, and this motion for a new trial was properly denied.

The judgment appealed from is affirmed.

Judgment affirmed.

SIMKINS, P. J., and CRAVEN, J., concur.