296 S.E.2d 342

**STATE of West Virginia**

v.

**Darrell L. NICHOLSON.** (Two cases)

**Nos. 14569, 15340.**

Supreme Court of Appeals of
West Virginia.

June 23, 1982.

Bruce R. Walker, Asst. Atty. Gen., Charleston, for plaintiff, defendant in error.

James A. Matish, Clarksburg, for defendant, plaintiff in error.

PER CURIAM:

The appellant in these cases, Darrell Nicholson, was convicted in the Circuit Court of Doddridge County of one count of aiding and abetting the breaking and entering of a dwelling house and was subsequently sentenced to one to fifteen years in the penitentiary. On two separate occasions after his conviction, the appellant moved the circuit court for a new trial on the basis of newly discovered evidence. In both instances the circuit court denied the motion and from these final orders the appellant now appeals. Because both appeals stem from the same conviction and contain a common question of law, the cases have been consolidated for the purposes of this opinion.

The appellant was originally indicted for one count of breaking and entering a dwelling house and one count of aiding and abetting a breaking and entering. At the conclusion of the State's case at trial, the court directed a verdict for the appellant on the breaking and entering charge and only the remaining count of aiding and abetting was submitted to the jury. The jury found the appellant guilty and by order dated January 24, 1978, he was sentenced to the penitentiary.

On March 15, 1979, the appellant filed a motion for a new trial on the basis of newly discovered evidence. Attached to the motion was an affidavit executed by James R. Skidmore, the brother of the prosecution's principal witness, Mark Skidmore. In the affidavit, James Skidmore stated that during the appellant's trial he had been out of the country and was keeping his whereabouts a secret but that subsequent to the trial he discussed the case with his brother Mark who told him that the appellant was not one of the perpetrators of the breaking and entering. Specifically, the affidavit stated in part:

"That your deponent did, subsequent to the aforesaid trial, discuss the case with his brother Mark Skidmore and that Mark Skidmore told him that he broke into the Perkins house with the help and aid of his uncle Willy Skidmore and his cousin Dorsey Skidmore. Mark Skidmore also told your deponent that Darrell Lee Nicholson (referred to by Mark Skidmore as 'Butch' Nicholson) had nothing to do with the said breaking and entering. Mark Skidmore told your deponent that he testified against Darrell Lee Nicholson in order to keep Willy Skidmore and Dorsey Skidmore out of trouble.

"Your deponent did see several guns in the car of Dorsey Skidmore, subsequent to the subject breaking and entering. At the time Dorsey Skidmore said he was trying to sell the guns or to trade them for drugs.

"Your deponent knows that his brother was frequently in the company of Willy Skidmore and Dorsey Skidmore, and Mark Skidmore did use drugs with Dorsey Skidmore.

"Mark Skidmore told your deponent, subsequent to the aforesaid trial, that the authorities held up his parole from Pruntytown until he testified against Darrell Lee Nicholson."

A hearing on the motion for new trial was held on April 16, 1979. James Skidmore did not appear at the hearing to testify about the contents of his affidavit. After reviewing the newly discovered evidence and hearing the testimony of the appellant, the court denied the motion. The appellant appeals from this final order.

On April 21, 1980, the appellant filed a second motion for a new trial on the basis of newly discovered evidence. The new evidence this time consisted of the affidavit of Mark Skidmore himself. In the affidavit Mr. Skidmore recanted his trial testimony implicating the appellant and verified the contents of his statements in the affidavit

previously executed by his brother, James Skidmore. Mark Skidmore also stated that he testified against the appellant only because he was told that he would not be paroled from the West Virginia Industrial School for Boys in Pruntytown if he refused.

At a hearing held on the appellant's second motion for a new trial, Mark Skidmore appeared and testified, but invoked his fifth amendment rights and refused to answer the majority of questions posed by the State. By order dated January 13, 1981, the court overruled the appellant's motion for a new trial "for the reason that it would be unconscionable to permit an affiant to recant his testimony and then, on the advice of the attorney who represents the Defendant take the fifth amendment." The appellant also appeals from this final order.

The only issue for our consideration is whether the court erred in refusing to grant the appellant a new trial. In Syl. Pt. 9 of *State v. Hamric*, 151 W.Va. 1, 151 S.E.2d 252 (1966), we stated:

"A new trial on the ground of after-discovered evidence or newly discovered evidence is very seldom granted and the circumstances must be unusual or special."

Although our Court has not discussed recantation testimony or affidavits as a form of newly discovered evidence,[1] most courts hold that such testimony is exceedingly unreliable and untrustworthy, especially when it involves an admission of perjury. *See, e.g., People v. Veal*, 58 Ill. App.3d 938, 16 Ill.Dec. 188, 374 N.E.2d 963 (1978); *State v. Foy*, 224 Kan. 558, 582 P.2d 281 (1978); *State v. Linkletter*, La.,

345 So.2d 452 (1977); *Carr v. State*, 39 Md.App. 478, 387 A.2d 302 (1978); *People v. Bersine*, 48 Mich.App. 295, 210 N.W.2d 501 (1973); *State v. Harris*, 428 S.W.2d 497 (Mo.1968); *State v. Carter*, 69 N.J. 420, 354 A.2d 627 (1976); *State v. Shelton*, 21 N.C. App. 662, 205 S.E.2d 316 (1974); *Commonwealth v. Scott*, 284 Pa.Super.Ct. 440, 426 A.2d 128 (1981).

The question of whether a new trial should be granted on such testimony depends on all the circumstances of the case and is a matter within the discretion of the trial court. *People v. Jones*, 26 Ill.App.3d 78, 325 N.E.2d 56 (1975); *State v. Jackson*, Iowa, 223 N.W.2d 229 (1974); *State v. Larkin*, 212 Kan. 158, 510 P.2d 123 (1973); *Carr v. State, supra; Commonwealth v. Leate*, 361 Mass. 347, 280 N.E.2d 171 (1972); *People v. Bersine, supra; State v. Harris, supra; Commonwealth v. Coleman*, 438 Pa. 373, 264 A.2d 649 (1970); *Dillard v. State*, Tex.Cr.App., 550 S.W.2d 45 (1977); *State v. Shaffer*, 72 Wash.2d 630, 434 P.2d 591 (1967). As in most matters where the trial court acts in its discretion, an appellate court may intervene only when there is manifest abuse of that discretion.[2]

The test for whether newly discovered evidence merits a new trial was set out by this Court in Syl. Pt. 2, *State v. Stewart*, 161 W.Va. 127, 239 S.E.2d 777 (1977):

"A new trial on the basis of newly-discovered evidence will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side. However, when the newly-discovered impeachment evidence comes within the following rules, a new trial will be granted: (1) The

---

1. In *State v. Frazier*, 162 W.Va. 935, 253 S.E.2d 534 (1979), the appellant was convicted of receiving a stolen automobile. A prosecution witness later recanted a portion of his trial testimony concerning the car's engine at a hearing held on a motion for a new trial. The Court focused on the fact that the newly discovered impeachment evidence went only to a collateral issue and did not impeach the State's key witness who had identified the stolen vehicle. The recantation testimony itself, which was the newly discovered evidence, was not specifically discussed as such.

2. In *People v. Shilitano*, 218 N.Y. 161, 180, 112 N.E. 733, 739 (1916), Judge Cardozo, in a concurring opinion, stated the duty of a trial judge as follows:

"Three witnesses for the prosecution have stated under oath to the trial judge that their testimony upon the trial was false. It became his duty to say whether they were conscience-stricken penitents, or criminal conspirators to defeat the ends of justice."

evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) The facts must appear in his affidavit that the party was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) The evidence must be new and material, and not merely cumulative. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits."

In *Stewart*, we recognized that, under certain circumstances, newly discovered evidence consisting solely of impeachment evidence may be sufficient to warrant a new trial if all the other elements are met.

■ The alleged newly discovered evidence in the case before us falls short of the *Stewart* impeachment standard. It is obvious that the witness, Mark Skidmore, either lied at the first trial or lied in his affidavit in support of a new trial. After reviewing the record in its entirety, we do not believe that there is even a remote possibility that the jury would find the recanting affidavits and subsequent testimony any more believable than the original trial testimony.

■ Mr. Skidmore refused to answer many of the questions posed by the State during the hearing on the appellant's motion for a new trial. His equivocal testimony plus the fact that his original trial testimony can be read to the jury in a new trial and admitted into evidence for the truth of the matter asserted therein,[3] lead us to conclude that the court was correct in denying each of appellant's motions for a new trial. Only under circumstances where there are credible corroborating circumstances that would lead the trial court to

conclude that the witness did, indeed, lie at the first trial, can it be concluded that the fourth criterion of *Stewart* has been met.

Accordingly, for the reasons set forth above the judgments of the Circuit Court of Doddridge County are affirmed.

Affirmed.

---

3. The prior testimony would be admitted under our holding in *State v. Spadafore,* 159 W.Va. 236, 220 S.E.2d 655 (1975), where we discussed the admissibility of prior out-of-court statements as opposed to those made in a judicial atmosphere and concluded:

"Accordingly, while prior statements made under oath in a judicial atmosphere either by

deposition or at a prior trial and which have been subject to cross-examination by the defendant's counsel are admissible for the truth of the matter asserted, all other out-of-court statements may be used exclusively to impeach credibility and should be used sparingly in that regard."