358 S.E.2d 206

**STATE of West Virginia**

v.

**David E. DUDLEY.**

No. 17055.

Supreme Court of Appeals of West Virginia.

May 20, 1987.

David Johnson, Asst. Atty. Gen., for appellant.

Edwin C. Runner, Kingwood, for appellee.

PER CURIAM:

This is an appeal from a final order of the Circuit Court of Preston County, entered May 15, 1985, which adjudged the appellant, David Edward Dudley, guilty of the crime of burglary in the nighttime and of use of a firearm in the commission of a felony. The appellant's principal assignments of error concern the sufficiency of the evidence, the admissibility of evidence relating to his blood type and the trial court's refusal to grant a new trial upon evidence of juror misconduct. We find no reversible error, and we affirm the conviction.

On the evening of on December 24, 1984, a man, later identified as the appellant, brandished a rifle and threatened to kill the appellant's 17–year–old–sister as she stepped from a mobile home she shared with the appellant's father-in-law, Gerald "Doc" Haseleau, near Bruceton Mills, Preston County. The appellant's sister retreated into the mobile home and locked the front door, but soon heard heavy pounding on the door. She managed to escape through a back door before the intruder entered and, hearing gunshots, ran to a neighbor's house to call the police.

When the police arrived, the intruder was gone. The front door of the mobile home had been smashed in and the lock forced. Inside, the police found windows broken out, furniture overturned, bullet holes in the walls and blood on the front door, walls and floor. No rifle, bullets, shell casings or fingerprints were found on the premises, but the police did seize a bloody doorknob which was sent to the Criminal Investigation Bureau (CIB) laboratory in Charleston for analysis. When questioned, the appellant's father, who lived nearby, stated that the appellant was living in Pennsylvania and had not been in Preston County for several months.

On January 18, 1985, the appellant was arrested in Morgantown, Monongalia County, and transferred to the Preston County jail. A sample of the appellant's blood was drawn and sent to the CIB laboratory for analysis. On March 5, 1985, the grand jury returned a three-count indictment charging the appellant with nighttime burglary, daytime burglary and trespass with a firearm. The appellant's motion to quash the indictment was denied.

On April 11, 1985, the case proceeded to trial before a jury. Although no witness actually saw the appellant break into the mobile home, the appellant's sister identified him as the man who threatened her with a rifle just prior to the forcible entry. Corporal S.G. Midkiff, a forensic serologist from the CIB laboratory, testified that the appellant's blood and the blood taken from the doorknob had been analyzed and found to have consistent genetic characteristics. In particular, she noted that both samples were Type A and contained an enzyme called phosphoglucomutase (PGM). Corporal Midkiff testified that this combination of genetic markers occurs in only about 17.2% of the population, or in one out of six individuals.

The appellant presented an alibi defense, asserting that he was hunting with relatives and friends in Pennsylvania, some 40 miles away, at the time the crime occurred. The appellant also attempted to discredit the testimony of his sister, the only witness who placed him in Preston County on the night of the crime, by presenting evidence that she had run away from home with Haseleau when she was 15. The appellant asserted that this relationship had resulted in hostile and vengeful feelings between the Dudley family and Haseleau and that his sister's testimony was the product of Haseleau's evil influence.

On April 12, 1985, the jury found the appellant guilty of nighttime burglary. By special interrogatory, the jury found that the appellant had used a firearm in the commission of the crime. The appellant filed a motion to set aside the verdict which was denied after a hearing conducted on May 15, 1985. The appellant was sentenced to a term of not less than one nor more than fifteen years imprisonment, with no eligibility for parole for three years due to the use of a firearm. It is from this order that the appellant now appeals.

The appellant's principal assignment of error is that the evidence was insufficient to support his conviction. The appellant notes that no physical evidence was found at the scene to connect him to the crime with the exception of the blood found on the doorknob, which was not conclusive evidence of guilt. His primary contention in this regard, however, is that his sister's testimony was suspect and should have been excluded from consideration by the trial court in ruling on the motion to set aside the verdict.

The evidence adduced at the post-trial hearing showed that at approximately 3:30 p.m. on May 8, 1985, the appellant's sister gave a statement to Deputy K.R. Farrell in which she recanted her trial testimony. She stated that her testimony at trial was correct except insofar as she had identified her brother as the man who accosted her with a rifle. She told Deputy Farrell that because of the darkness, she had been unable to positively identify the intruder, but had accused the appellant because she and Haseleau had had trouble with the appellant before and suspected he was probably responsible for the break-in. The appellant's sister was accompanied by her grandmother and appeared upset when she made this statement.

At approximately 5:00 p.m. on the same day, however, the appellant's sister telephoned the prosecuting attorney and repudiated her recantation. The appellant's sister initially testified that the prosecuting attorney had threatened to have her infant daughter removed from her custody if she did not disavow the recantation. On cross-examination, however, she testified that she called the prosecuting attorney because other people had warned her she could lose custody of the child if she were found guilty of perjury. In any event, the appellant's sister informed the prosecuting attorney that she had lied when she gave the statement to Deputy Ferrell in order to help her brother. In a second statement given on May 14, 1985, the appellant's sister asserted that she had recanted her testimony at the urging of her grandmother. The trial court found that the recantation was the product of emotional pressure from the appellant's family and denied the motion to set aside the verdict.

A motion to set aside the verdict on the basis of a recantation is judged by the same standards applicable to evidence discovered after trial. In *State v. Nicholson*, 170 W.Va. 701, 296 S.E.2d 342 (1982), we made the following observations:

> In Syl. Pt. 9 of *State v. Hamric*, 151 W.Va. 1, 151 S.E.2d 252 (1966) we stated:
>
>> "A new trial on the ground of after discovered evidence or newly discovered evidence is very seldom granted and the circumstances must be unusual or special."
>
> Although our Court has not discussed recantation testimony or affidavits as a form of newly discovered evidence [footnote omitted], most courts hold that such testimony is exceedingly unreliable and untrustworthy, especially when it involves an admission of perjury. [Citations omitted]
>
> The question of whether a new trial should be granted on such testimony depends on all the circumstances of the case and is a matter within the discretion of the trial court. [Citations omitted] As in most matters where the trial court acts in its discretion, an appellate court may intervene only when there is manifest abuse of that discretion. [Footnote omitted]
>
> The test for whether newly discovered evidence merits a new trial was set out by this Court in Syl. Pt. 2, *State v. Stewart*, [161 W.Va. 127], 239 S.E.2d 777 (1977):

"A new trial on the basis of newly-discovered evidence will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side. However, when the newly-discovered impeachment evidence comes within the following rules, a new trial will be granted: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) The facts must appear in his affidavit that the party was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) The evidence must be new and material, and not merely cumulative. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits."

\* \* \* \* \* \*

Only under circumstances where there are credible corroborating circumstances that would lead the trial court to conclude that the witness did, indeed, lie at the first trial, can it be concluded that the fourth criterion of *Stewart* has been met. 170 W.Va. at 703–704, 296 S.E.2d at 344–345.

In this case we find no evidence of such "credible corroborating circumstances." There was evidence to support the trial court's conclusion that the appellant's 17–year-old sister recanted her testimony as a result of substantial family pressure. The repudiation of the recantation was consistent with her trial testimony, which the trial court found to be forthright and credible. Accordingly, we find no abuse of discretion which would warrant reversal of the trial court's ruling.

The appellant also contends that the trial court erred in allowing the State to introduce evidence pertaining to the blood sample taken from the appellant on January 24, 1985. At an *in camera* suppression hearing conducted during trial,[1] the appellant and his mother testified that a deputy sheriff had advised the appellant's mother that the appellant could not be released on bond until he consented to the blood test. The appellant asserted that this promise that he would be released on bond induced him to consent to the blood test. The deputy sheriff testified, however, that he had no discussions with Mrs. Dudley or the appellant concerning the blood test or the appellant's release on bond.

The appellant's contention on appeal is that the consent to submit to the blood test was not voluntary and that the blood was drawn in violation of the Fourth Amendment prohibition against unreasonable searches and seizures. " 'Whether a consent to search is in fact voluntary or is the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.' Syl. pt. 8, *State v. Craft*, [165 W.Va. 741], 272 S.E.2d 46 (1980)." Syllabus point 4, *State v. Farmer*, 173 W.Va. 285, 315 S.E.2d 392 (1983). That determination is a matter within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. In view of the conflicting evidence as to the circumstances surrounding the appellant's consent to the blood test, we find no abuse of discretion which would warrant our interference with the trial court's ruling that the consent was voluntary.

The appellant also contends that the evidence relating to comparison of the two blood samples was inadmissible because Corporal Midkiff was not qualified as an expert in the field with special knowledge of the subject matter. The record shows, however, that the appellant did not object to Corporal Midkiff's qualifications at trial. " 'Error in the admission of testimony to

---

1. We note that the appellant registered no objection to the introduction of this evidence until after the jury had been empanelled and testimony had been given. Rule 12(b)(3) of the West Virginia Rules of Criminal Procedure requires that motions to suppress evidence to be made prior to trial unless the grounds therefor are not known to the defendant. There is no evidence in the record to excuse the appellant's failure to bring the matter to the trial court's attention before trial commenced.

which no objection was made will not be considered by this Court on appeal or writ of error, but will be treated as waived.' Syl. pt. 4, *State v. Michael,* 141 W.Va. 1, 87 S.E.2d 595 (1955)." Syllabus point 7, *State v. Davis,* 176 W.Va. 454, 345 S.E.2d 549 (1986). *See also State v. Clawson,* 165 W.Va. 588, 270 S.E.2d 659 (1980).

The appellant next contends that the trial court erred in refusing to set aside the jury's verdict on the ground that it was the product of threats and intimidation in the jury room. Shortly after trial, one of the jurors advised counsel for the appellant that he had been pressured by the jury foreman to acquiesce in the guilty verdict even though he had a reasonable doubt as to the appellant's guilt. At the post-trial hearing conducted on May 15, 1985, the trial court refused to allow the juror to testify or to consider the allegations of improper conduct in the jury room as grounds for setting aside the verdict.

In *State v. Scotchel,* 168 W.Va. 545, 285 S.E.2d 384 (1981), we stated, at syllabus point 4: "The general rule is that statements relative to intimidation or coercion by fellow jurors cannot ordinarily be received to impeach the verdict." Here there was no evidence of any extrinsic influence or misconduct which would warrant further inquiry into the allegations presented. The jurors, in response to questioning by the judge in open court, indicated that each of them concurred in the verdict. Accordingly, the trial court properly refused to consider the matter further.

The appellant also assigns a number of alleged errors which can be disposed of briefly. He contends that the trial court erred in refusing to quash the indictment as fatally defective due to the failure of the grand jury foreman to indorse it on the reverse. The record shows, however, that the grand jury foreman's signature appeared on the face of the indictment. Accordingly, the indictment complied with the requirements of Rule 7(c)(1) of the West Virginia Rules of Criminal Procedure, and the absence of an indorsement on the reverse did not render it fatally defective.

*State v. Davis,* 178 W.Va. 87, 357 S.E.2d 769 (1987) (Miller, J.)

The appellant also contends that the trial court erred in failing to instruct the jury on various points of law upon which he relied. The record shows, however, that defense counsel neither offered nor requested instructions on these points. Accordingly, he must be deemed to have waived the right to such instructions. *State v. Schofield,* 175 W.Va. 99, 331 S.E.2d 829 (1985). Moreover, the record shows that the matters which would have been contained in such instructions, had they been offered, were substantially addressed in other instructions read to the jury or in the closing arguments of counsel. " 'It is not reversible error to refuse to give instructions offered by a party that are adequately covered by other instructions given by the court.' Syllabus Point 20, *State v. Hamric,* 151 W.Va. 1, 151 S.E.2d 252 (1966)." Syllabus point 5, *State v. Ashcraft,* 172 W.Va. 640, 309 S.E.2d 600 (1983).

The appellant next contends that the prosecuting attorney committed reversible error in making prejudicial remarks in his summation to the jury. Defense counsel did not object to these remarks at trial and, so, waived any error therein. *State v. Cirullo,* 142 W.Va. 56, 93 S.E.2d 526 (1956). Moreover, we have reviewed the summation of the prosecuting attorney and find nothing which was clearly prejudicial or which resulted in manifest injustice. *See State v. Buck,* 170 W.Va. 428, 294 S.E.2d 281 (1982); *State v. Barker,* 168 W.Va. 1, 281 S.E.2d 142 (1981).

Finally, the appellant asserts in his reply brief that he was denied effective assistance of counsel by his court-appointed attorney's failure to make timely objections so as to preserve error for appeal and to offer instructions which clearly presented his theory of the case. From our review of the record we find no error in the admission of evidence and/or the failure to offer instructions which would result in reversal of the appellant's conviction. "[P]roved counsel error which does not affect the outcome of the case, will be regarded as

harmless error." Syllabus point 19, in part, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974). Accordingly, we find no ineffective assistance of counsel as would warrant reversal of the appellant's conviction.[2]

For the reasons stated herein, we find no error which would warrant reversal of the appellant's conviction. Accordingly, we affirm the judgment of the Circuit Court of Preston County.

Affirmed.

**2.** For the same reason, the appellant has not shown grounds for reversal of his conviction under the "cumulative error" doctrine. *See* *State v. Hall,* 172 W.Va. 138, 304 S.E.2d 43 (1983).