# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 16-0122** (Jefferson County 15-F-44)

**Harold D. Stambaugh, Jr.,**
**Defendant Below, Petitioner**

**FILED**

**November 18, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Harold D. Stambaugh, Jr., by counsel B. Craig Manford, appeals the order of the Circuit Court of Jefferson County, entered January 5, 2016, following his conviction for the offenses of first degree murder and brandishing a weapon. Respondent State of West Virginia by counsel Brandon C.H. Sims, filed a response. Petitioner replied.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was indicted for the offenses of murder in the first degree, burglary, and brandishing a firearm. On December 18, 2015, a petit jury convicted petitioner of the offenses of murder in the first degree and brandishing a firearm. Petitioner was acquitted of the offense of burglary.

The evidence presented at trial revealed that on November 7, 2014, Jefferson County 911 received two calls reporting shots fired. One call was from petitioner's daughter, C.S., who told emergency dispatch that her father was shot in the face and mouth. Law enforcement responded to petitioner's residence, and found petitioner with a gunshot wound in his mouth[1]. C.S. informed law enforcement that petitioner indicated to her that he shot himself, and told law enforcement that she was concerned for petitioner's wife, Victoria Stambaugh ("the victim"), who was staying with her mother, Theresa Melcher. Law enforcement also discovered a trail of blood leading to the victim's mother's home ("the Melcher residence") which was right around the corner from petitioner's home), where the victim had been staying with her mother. Officers

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.,* 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.,* 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.,* 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

discovered the victim's body in the living room of the Melcher residence, with a gunshot wound to the head, and several other gunshot wounds. The officers also recovered a .40 caliber handgun, which was determined to be the murder weapon.

C.S. testified at trial that petitioner was intoxicated every night, drinking one entire 750 ml bottle of rum daily, and on the night of the murder, she arrived home to find her father highly intoxicated. At approximately 9:35 that evening, she saw her father place the victim's belongings in trash bags and place the bags in his truck. She then went to sleep, and woke up to her father banging on the residence door, bleeding from his mouth and face. Petitioner's sister testified that prior to the murder she received a text message from the victim, in which she wrote "David came to moms (sic) tonight drunk and was talking crazy. I can't talk to him while he is in this state. I told him I would call him tomorrow but I feel he might come back here tonight."

Petitioner was transported to INOVA/Fairfax Hospital ("INOVA"), where he was treated for his injuries. On November 18, 2014, petitioner gave a statement to police. In his statement, petitioner told the police that he and his wife argued for several days before the shooting, and that, four days prior to the shooting, the victim moved to her mother's home. Petitioner claimed he could not remember all of the details of the night of the shooting, but recalled that he went to the Melcher residence to speak with the victim. Petitioner told the officer that he blacked out during the period of time when his wife was killed, but recalled waking up in a pool of blood, and then shooting himself. Petitioner told the officer regarding his involvement in the crime: "I'm not denying – just because I don't remember what happened I'm not denying that I'm not the person. Obviously you look at this I'm obviously the person. . . ."

Officers also testified that a suicide note was found in petitioner's belongings which stated, "Please tell Theresa she meant more to me than she knew." Under cross-examination, petitioner admitted that "Theresa" was the victim's mother. The medical examiner testified that the victim died from seven gunshot wounds from five bullets, two of which perforated and re-entered her body.

Petitioner presented testimony from witnesses that petitioner usually drank to excess, and frequently became intoxicated. Petitioner presented the testimony of Dr. Paul Hill, who testified that petitioner suffered from mild to moderate memory loss and impairment while sober due to chronic, long-term alcoholism. Petitioner also presented the testimony of Dr. Salmaan Khawaja, who testified that petitioner's memory impairment was indicative of impaired executive functioning, and that, as a result, petitioner lacked the ability to plan, to judge, and to make informed and rational decisions. Petitioner testified on his own behalf, and claimed that he could not remember the details of the night in question. In rebuttal, the State presented testimony from Dr. David Clayman, who stated that in his opinion, the petitioner's mental state on November 7, 2014, "showed he was capable of purposeful, sequential, and direct behavior."

Petitioner was convicted of the offenses of first degree murder and brandishing a firearm. Following his conviction for first degree murder the jury determined that petitioner should be granted mercy. As a result, the circuit court ultimately sentenced petitioner to life in the penitentiary, with the possibility of parole for his murder conviction, and one year in the penitentiary for the offense of brandishing. Petitioner now appeals his convictions.

Petitioner asserts that there was insufficient evidence to sustain his convictions.[2] Petitioner complains that the trial court erred in denying his motion for a directed verdict pursuant to Rule 29 of the West Virginia Rules of Criminal Procedure. Petitioner argues that, based upon the evidence presented at trial, no rational jury could conclude beyond a reasonable doubt that petitioner possessed the mental capacity to premeditate and deliberate the murder of the victim.

We have held regarding claims of insufficient evidence that,

> "A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syl. pt. 3, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 2, *State v. McFarland*, 228 W. Va. 492, 721 S.E.2d 62 (2011). Further,

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

---

[2] Petitioner also asserts as an assignment of error that the circuit court abused its discretion when it refused to allow petitioner's proposed expert witness to testify regarding petitioner's blood alcohol concentration at the time of the killing. However, a review of the record reveals that petitioner's counsel did not object to this ruling, and accepted the trial court's decision to exclude the subject testimony but allow the admission of a blood alcohol chart contained in West Virginia Code § 60-6-24. Consequently petitioner did not preserve this issue for consideration on appeal. We have held, that "'"[e]rror in the admission of testimony to which no objection was made will not be considered by this Court on appeal or writ of error, but will be treated as waived.' Syl. pt. 4, *State v. Michael,* 141 W.Va. 1, 87 S.E.2d 595 (1955).' Syllabus Point 7, *State v. Davis,* 176 W.Va. 454, 345 S.E.2d 549 (1986)." Syl. Pt. 3, *State v. Dudley*, 178 W. Va. 122, 358 S.E.2d 206 (1987). Accordingly, we decline to consider this assignment of error as petitioner waived this argument below.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

Upon careful review of the record, we find no error. Viewed in the light most favorable to the State, there is sufficient evidence to uphold petitioner's convictions for the offenses of first degree murder and brandishing. Petitioner confessed to killing his wife on November 7, 2014. Evidence presented at trial established that petitioner was angry with the victim because she moved out of the marital home and refused to speak to petitioner for several days. Petitioner went to the Melcher residence to speak with the victim, then returned home, where he placed her clothing in trash bags and placed those bags in the bed of his truck. Petitioner then returned to the Melcher residence where he shot the victim five times, striking her in her legs, wrist, and head. After shooting the victim, petitioner returned to his residence where he shot himself in the face. Viewed in the light most favorable to the prosecution, we find that there was sufficient evidence from which the jury could find petitioner guilty beyond a reasonable doubt. Accordingly, we find no error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 18, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II