# CHARLESTON

## STATE v. DUFFY.

Submitted November 17, 1914.   Decided December 15, 1914.

1. CRIMINAL LAW—*Appeal—Discretionary Ruling—Refusal of Continuance.*
   The matter of continuances is within the sound discretion of the trial court, subject however to review, and this court will not reverse for refusal to continue a case on account of an absent witness, when it appears that the complaining party has not used proper diligence to have his witnesses summoned. (p. 300).

2. SAME—*Continuance—Absence of Witness—Diligence to Procure.*
   Failure to have summons issued for such witness until the day before the case is to be tried shows lack of proper diligence. (p. 300).

3. GAMING—*Keeping Common Gaming House—Elements of Offense—Profit.*
   Points of the syllabus in *State* v. *Baker and Rader*, 69 W. Va. 263, relating to the keeping of a common gaming place, reaffirmed. (p. 300).

(LYNCH, JUDGE, absent.)

Error to Circuit Court, Harrison County.

John W. Duffy was convicted of keeping a gaming house, and brings error.

*Affirmed.*

*Chas. W. Moore* and *Sperry & Sperry*, for plaintiff in error.

*A. A. Lilly*, Attorney General, for the State.

WILLIAMS, JUDGE:

Defendant was tried and convicted in the criminal court of Harrison county on an indictment charging him with keeping a "common gaming house," and adjudged to pay a fine

of $50 and serve a jail sentence of sixty days. He was denied a writ of error by the circuit court of said county, and thereafter obtained one from this court. A number of errors are assigned in the petition, but no brief is filed on his behalf.

One assignment of error is, that the trial court improperly overruled his motion for a continuance. The record shows that the continuance was refused because the case had been continued at a former day of the term, on motion of defendant, when it was called for trial. The court then set it for trial at another day of the term, and informed defendant that it would be tried on the day set. It also appears that defendant did not have summons issued for his witness Bell on account of whose absence the continuance was asked, until the afternoon of the previous day. The refusal to continue was clearly no abuse of judicial discretion. Defendant had not shown proper diligence to have his witness summoned in time. *State* v. *Brown,* 62 W. Va. 546, and *Cicerello* v. *Railway Co.,* 65 W. Va. 439. The matter of continuances is within the sound discretion of the trial court, subject however to review for abuse thereof. *State* v. *Harrison,* 36 W. Va. 729; *State* v. *Roberts,* 50 W. Va. 422; and *Boyd* v. *Beebe,* 64 W. Va. 216.

Exception was taken to the ruling of the court in permitting certain questions to be asked of, and answers made thereto, by David L. Morris a witness for the state. Without encumbering the reports with a quotation of these questions and answers, which cover about a page of the printed record, it is sufficient to say that they were for the purpose of proving that defendant was compensated for the use of his room by getting a portion of the stakes, commonly called a "rake-off". It was not necessary to prove that fact in order to convict him of the crime alleged. *State* v. *Baker and Rader,* 69 W. Va. 263. Therefore, the evidence was wholly immaterial. But its admission does not call for reversal, for we can clearly see that defendant was not prejudiced by it. *State* v. *Yates,* 21 W. Va. 761.

Complaint is made of the following instruction which the court gave at the state's request: "The Court instructs the jury that if you believe from the evidence in this case that a

gaming house was being operated at the time and place charged in the indictment and that the defendant John W. Duffy was then and there the proprietor thereof, or was interested in the game or games and the profits of the same, then the jury should find the defendant guilty as charged in the indictment in this case.''

No particular objection to the instruction is pointed out, and we find no fault with it. Defendant was the proprietor of the place, and he admits that he and his bartenders had charge of it. He was, therefore, chargeable with knowledge of the purpose for which it was being used, and if it was in fact used as a common gaming place he was guilty. If he was interested in the games and the profits thereof, that would be positive proof that he was maintaining a gambling place, for he admits his proprietorship. So that, if the jury were warranted in believing that gambling was being carried on in the room, they were bound to find defendant guilty if they found that he was the proprietor, and this he admitted, or that he got a part of the profits of the game, or that he was both proprietor and interested in the profits of the game.

Complaint is also made of the court's refusal to give the following instruction asked by defendant and in modifying it and giving it in the modified form, to-wit: ''The Court instructs the jury that in order to convict the defendant of the offense charged in the indictment the State must show that gaming was carried on at the place charged in the indictment to such an extent to constitute a nuisance, and that the defendant was the proprietor of the game or interested therein, or in the profits thereof, and that a nuisance cannot be established by merely showing that there was gaming conducted at a particular place at one time or on one occasion; but it must be shown that gaming was carried on to such an extent as to constitute a nuisance, *or tend to corrupt the youths or other persons who frequent the place,* (that is that gaming was carried on to such an extent as to be against good morals and tend to corrupt the youths or other persons who frequent the place, or to such an extent as to injure or annoy the adjoining residents or property owners).'' The modification consisted in inserting the italicized words, and

omitting the words in parenthesis which follow them. As originally drawn the instruction did not correctly state the law. It was not necessary that the gambling should have injured or annoyed the adjoining residents or property owners in order to constitute it a public nuisance and a crime. If the place was kept for the convenience of gamblers, who alone knew of it and frequented it, it was nevertheless a violation of law. *State* v. *Baker and Rader, supra;* neither was it for the jury to say whether it did, or did not, corrupt the morals of the person who frequented it. That is a question determined by the law. The only question the jury had to decide was, did defendant maintain a common gaming place as charged? The instruction, as modified, is more favorable to defendant than the law entitled him to, and he can not complain that it was not given without modification. The facts in this case are very similar to those in the case above cited, and we deem it unnecessary to extend this opinion by again reviewing the law relating to the keeping of a common gaming house. This case is governed by our decision in that case; the law of the two cases is the same, and it is only necessary to refer to our opinion in that case for a discussion of the law governing this case.

The motion to set aside the verdict was properly overruled. We have read the record carefully and find in it sufficient evidence to sustain the verdict. The gambling was carried on in a large room directly over defendant's saloon. Access to it was either by way of the saloon or a room by the side of it used as a restaurant. The room had no bed in it, but had several tables, chairs and a desk. It was kept lighted all night. Several witneses say they gambled there and saw others do the same thing, both day and night. Cards, dice and chips to represent money were used. The chips were received at the saloon as money. They were kept locked in the desk in the upper room, and Mr. J. S. McCloud, defendant's bartender, kept the key to the desk. Defendant says that Mr. McCloud stayed in the room "practically the last year," and that he gave him permission to use the desk and charged him no rent either for the room or desk, and that he (defendant) went up in the room nearly every day. We

here copy a portion of defendant's testimony from which, if there was no other evidence, we think the jury could have properly believed he knew what was going on in the room: "Q. If they gambled up stairs with cards and chips and on the tables and you were there every day could you have told that they were gambling there, if you had seen the chips and cards and tables out? A. The chips were all locked up; the chips were in the desk, the chips that I owned. Q. The chips of the building, how could they be obtained? A. They couldn't be obtained without they would be obtained from Mr. McCloud, he has the key of the desk that they were locked in. Q. You gave him the key? A. Yes sir. Q. Did you ever make any effort about concealing the chips and cards and tables in the room to prevent them from being played on? A. No sir, I didn't. Q. Now isn't it a fact that most of the people that used the closet there in connection with the bar go to the closet where—on the floor where the bar is? A. Well, there is a good many that does and a good many that don't. The down stairs closet is in bad shape, and I have a key for the back door and I tell the bar tenders to give it to anybody that inquires. Q. Could they get in these rooms up stairs without getting that key? A. No sir. Q. They would have to have the key to get in the big room? A. Yes sir." He here admits that he owned the chips and that McCloud kept them in the desk upstairs.

The judgment is affirmed.

*Affirmed.*