# CHARLESTON.

## STATE v. MONEYPENNY.

Submitted November 13, 1917.    Decided November 20, 1917.

1. CRIMINAL LAW—*Trial—Verdict.*

   A verdict in a criminal case should be read in connection with the indictment, and when so read, if its meaning is certain, it is sufficient.    (p. 365).

2. HOMICIDE—*Verdict—Shooting With Intent to Kill.*

   A verdict on the trial of a person charged in the language of Sec. 9, Ch. 144, Code, with maliciously shooting, stabbing, etc., with the intent therein named, returned in the following words: "We the jury find the defendant not guilty of malicious assault upon Albert Moneypenny with intent to maim, disfigure, disable and kill as charged in the within indictment, but we do find the defendant guilty of unlawful assault upon Albert Moneypenny with intent to maim, disfigure, disable and kill as charged in the within indictment," finds the prisoner guilty of unlawfully, but not maliciously, committing the statutory offense with which he is charged, and not simply guilty of the technical, common-law offense of assault.    (p. 365).

Error to Circuit Court, Lewis County.

Elias Moneypenny was convicted of maliciously shooting, cutting, and wounding with intent to maim, disfigure, disable, and kill, and he brings error.

*Affirmed.*

*Brannon, Stathers & Stathers,* for plaintiff in error.

*E. T. England,* Attorney General, and *Charles Ritchie,* Assistant Attorney General, for the State.

WILLIAMS, JUDGE:

Defendant was tried at the March term, 1917, on an indictment, found at the November term, 1916, charging him with unlawfully, maliciously and feloniously shooting, stabbing, cutting and wounding one Albert Moneypenny with intent to maim, disfigure, disable and kill him.    At the November term defendant was arraigned in court and, being represented by counsel, demurred to the indictment.    The court

overruled the demurrer, whereupon he pleaded not guilty and issue was thereon joined and he was remanded to jail. At a later day of the term he, together with Zella Moneypenny as his surety, entered into a recognizance for his appearance at the first day of the next regular term. And at that term, which was the March term, 1917, he was tried and the jury brought in the following verdict: "We the jury find the defendant not guilty of malicious assault upon Albert Moneypenny with intent to maim, disfigure, disable and kill as charged in the within indictment, but we do find the defendant guilty of unlawful assault upon Albert Moneypenny with intent to maim, disfigure, disable and kill as charged in the within indictment." He moved the court to set aside the verdict and grant him a new trial, and the court took time to consider the motion, and, at a later day in the term, overruled his motion and rendered judgment that he be confined in the pentitentiary for a period of five years. He alleges error and asks to have the judgment reversed on several grounds: First, because the court erroneously refused to grant him a continuance.

The continuance was asked for on the ground that the prisoner was physically unable to stand the strain of a trial, or be of any assistance to his counsel in the conduct of his defense. Three physicians were put upon the witness stand and examined with reference to defendant's physical condition. One of them says he saw him on the Friday before and his temperature and pulse were above normal, temperature 100° and pulse 83 or 84, and he was in a nervous condition. This was Dr. Warder, who furnished him medicine at different times during the winter; he also says he thought his high pulse and temperature indicated biliousness, and he gave him two vegetable compound cathartic pills to reduce his temperature. If he took the pills, they apparently had the desired effect, because Dr. Reger says he saw him on the next day, Saturday, and found his temperature and pulse considerably below normal. Dr. Hamilton examined him about an hour before the trial was begun and says his temperature was then about a degree above normal and his pulse from ten to twelve beats above normal. None of them made a suffi-

ciently minute examination of defendant to be able to state the cause of his apparent ·abnormal pulse and temperature, but all of them thought it would be a risk to his health to go through the ordeal of a trial at that time, that there was danger of a nervous collapse. It appears defendant had been at the home of one of his friends or relatives in the village of Roanoke for several days, just preceding the trial, and rode from there to Weston, a distance of several miles, on the train on the day of his trial, apparently without physical injury. The evidence taken on the trial of his guilt or innocence is ·not in the record, and it does not appear that he suffered physically on account of being forced into trial, or that his defense was not as well conducted and as completely made out as if he had been in robust health. It does not appear that defendant desired to testify in his own behalf and was physically unable to do so. No abuse of the court's discretion in overruling the prisoner's motion for a continuance is shown. The rule has been so often announced, that the question of a continuance is within the sound discretion of the trial court and, unless it appears to have been abused, its rulings in respect thereto will not be ground for reversal of a judgment, that it is unnecessary to cite authorities.

The refusal of the court to exclude H. L. Frazier from serving on the jury is assigned as error. Upon his voir dire Mr. Frazier admitted he had talked with a number of people concerning the case and may have formed an opinion respecting the prisoner's guilt or innocence, but said he did not remember to have expressed any opinion, but that others in talking to him would indicate which of the parties they thought was to blame. But his examination shows he was without prejudice or bias and could render a fair and impartial verdict upon the testimony of witnesses to be examined on the trial. That he may have previously entertained and even expressed a hypothetical opinion would not disqualify him. His opinion must have been deliberate and decided in order to disqualify him as a juror. *State* v. *Schnelle,* 24 W. Va. 767, and *State* v. *Baker,* 33 W. Va. 319.

Complaint is made of certain instructions given at the in-

stance of the State.   To incorporate them in this opinion
would unnecessarily encumber the reports.   It suffices to say
we have carefully considered them and find that they state
correct legal principles applicable to a case of the kind
charged in the indictment, and, the evidence not being be-
fore us, we must assume they were appropriate.

It is assigned as error that the court's judgment is in ex-
cess of the verdict; that the verdict acquits defendant of the
charge of felony and finds him guilty of a misdemeanor
only.   Whether it does so or not depends on the construction
of the terms employed by the jury to express their verdict.
It must be read in connection with the indictment to ascer-
tain what the jury meant by the terms ''unlawful assault''
of which they found defendant guilty.   *State* v. *Arbruzino*,
67 W. Va. 534; *Hoback* v. *Commonwealth*, 28 Grat. 922;
*Rogers* v. *Commonwealth*, 1 Va. Dec. 798; *Henderson* v. *Com-
monwealth*, 98 Va. 794; *Hairston* v. *Commonwealth*, 97 Va.
754; and *State* v. *Staley*, 45 W. Va. 792.

True the terms ''unlawful assault'' are not the technical
definition of the crime with which the prisoner was charged,
or of the lesser crime of which he was found guilty.   The
lesser offense of unlawfully, but not maliciously, shooting,
stabbing, cutting and wounding a person, with intent to maim,
disfigure, disable and kill him, is comprehended in the greater
offense of maliciously doing those things, with the same in-
tent.   The jury did not use the term *assault* to describe the
statutory offense with which the prisoner was charged, that
of shooting, stabbing, etc., with intent to maim, disfigure,
etc., described in Sec. 9, Ch. 144, Code.   The jury acquitted
him of maliciously doing those acts, but found him guilty of
unlawfully doing them with intent to maim, disfigure, etc.
It is just as plausible to argue that the verdict is not re-
sponsive to the issue, and does not expressly acquit the pris-
oner of maliciously doing the things charged against him, as
it is to say the jury did not find him guilty of unlawfully
doing those things, because the jury used the term *assault*
to describe the offense of which they acquitted him as well
as to describe the offense of which they found him guilty.
If they had meant to find him guilty only of a technical com-

mon law assault, they would not have added that the assault was committed "with intent to maim, disfigure, disable and kill as charged in the within indictment." Those words are superfluous to describe any other offense than the statutory offense charged, and clearly indicate that the jury meant to find the prisoner guilty of the offense expressly charged in the indictment, and not simply of a technical assault, which is charged only by implication. Reading the verdict of the jury in connection with the indictment, there can be no doubt concerning the particular crime of which the jury found the prisoner guilty.

The judgment will be affirmed. *Affirmed.*