345 S.E.2d 549

**STATE of West Virginia**

v.

**Larry Darnell DAVIS.**

No. 16433.

Supreme Court of Appeals of
West Virginia.

March 25, 1986.

Rehearing Denied July 9, 1986.

Robert S. Baker, Beckley, for appellant.

Silas B. Taylor, Deputy Atty. Gen., Charleston, for appellee.

McGRAW, Justice:

The appellant, Larry Darnell Davis, appeals from his conviction of aggravated robbery in the Circuit Court of Raleigh County. His various assignments of error are as follows: (1) the failure to grant his motion for continuance made immediately before trial; (2) the admission of clothing seized from his home pursuant to a search warrant obtained following a warrantless search of the premises; (3) the permission of an in-court identification by a witness who had participated in an allegedly constitutionally deficient photographic lineup; (4) the admission of a store audit showing the amount taken in the robbery over a hear-

say objection; (5) the allowance of lengthy fingerprint testimony despite his stipulation to the use of a crime scene telephone booth from which the fingerprints were taken; (6) the limitation of cross-examination conducted by defense counsel; (7) the refusal to admit testimony concerning a statement made by trial counsel at the scene of a search; (8) the failure to permit impeachment by prior felonies of the appellant's alleged accomplice who testified against him pursuant to a plea arrangement; (9) the refusal to direct a verdict of the appellant at the close of all the evidence; (10) the failure to give an alibi instruction and the refusal to give a motive instruction; (11) the failure to submit a verdict form to the jury; (12) the failure to consider probation as an alternative to imprisonment; and, (13) unconstitutionally ineffective assistance of counsel. Following a brief recitation of the circumstances which formed the basis for this prosecution, we will address each of these assignments of error.

At approximately 8:00 a.m. on Sunday, September 13, 1981, Levi Cobb, a Beckley paperboy, upon entering a local 7-Eleven, noticed a black male dressed in an army jacket and hood exit a tan four-door Chevette hatchback, driven by another black male, and enter a telephone booth, after the car had pulled onto an Exxon service station lot across the street. Cobb testified that the reason he noticed this man was that he thought his attire inappropriate given the weather on that particular day. In any event, after Cobb left the 7-Eleven a few minutes later, following consumption of a hot chocolate, he observed that this individual was still standing in the telephone booth, and that the man was now wearing gloves.

A few minutes after Cobb's departure, Ida Mae Lilly, sales clerk at the 7-Eleven, testified that a black male, approximately six feet tall, wearing an army jacket, hood, and sunglasses entered the store. After surveying each of the three aisles, Lilly testified that the man asked for a paper bag. When Lilly, who had been cleaning in front of the counter, started around the counter to comply with this request, the man followed her, informed her that he wanted all her money, directed her to open the register, ordered her to lie still on the floor or he would blow her brains out, and emptied the register and a petty cash box. Lilly stated that no gun was visible, but that the assailant kept one hand in his jacket pocket. Neither Cobb nor Lilly was able to identify the appellant as the robber at trial.

Cynthia Applegate, a passenger in a car stopped at a light located at the intersection of two streets which bordered and divided the 7-Eleven and the Exxon lots, testified that, at approximately 8:30 a.m. that morning, she observed a heavily dressed black male, wearing a green jacket, hood, and sunglasses, walking briskly in her direction from the 7-Eleven to the Exxon station, carrying a white bag. She stated that although she observed this individual for two to three minutes while parked at the light, she never saw him fully in the face, noticing only that he had facial hair. After the light turned green, Applegate's companion drove onto the 7-Eleven parking lot, where both were informed by an unidentified gentleman that the store had just been robbed. The following day, Applegate was summoned to the police station, where the appellant, along with several other unidentified individuals were paraded past several times, with apparently no identification of the appellant taking place. Applegate was next shown six photographs, out of which she identified the appellant as the man she observed on the date of the robbery.

Herbert Cox, the appellant's cousin and coindictee, plead guilty to a reduced charge of accessory after the fact to aggravated robbery in exchange for his testimony against the appellant. Cox testified that he and the appellant initially went to the 7-Eleven at approximately 3:30 a.m. on the morning of the robbery to purchase some cigarettes. After they returned to the appellant's home a few blocks away, Cox testified that the appellant immediately suggested that they return to the 7-Eleven. When they returned, parking on the Exxon lot, at sometime between 3:30 and 4:00

a.m., Cox testified that the appellant, who stated that he needed some money and was going to rob the 7-Eleven, left the vehicle and did not return for approximately two hours, during which time Cox stated that he slept in the car parked on the Exxon lot. Cox then testified that the appellant returned to the car at approximately 5:30 a.m. and instructed him to move the car to another location several blocks away. Again, Cox stated, the appellant left the vehicle and did not return for approximately two hours. Cox said he did not know where the appellant went during these two absences of approximately two hours each. Finally, shortly after 8:00 a.m., Cox testified that he became impatient, and drove the car toward the 7-Eleven in search of the appellant. He stated that he was initially unable to locate the appellant at the 7-Eleven, but eventually found him two blocks from the store. Cox then testified that they returned to the appellant's residence, where the appellant related that, "[H]e just went in and took the money and made the lady lay down and came out."

Assisted with Cobb's identification of a tan Chevette having been parked nearby, the police were able to determine that it was similar to a vehicle owned by the appellant and went almost immediately to the appellant's residence. After being informed by the appellant's wife that he had gone to the National Guard Armory to report for training, the police went to the Armory, located Cox and the appellant, and asked them to come to the police station for questioning. Following the appellant's departure from the station and his return to the Armory, the appellant's wife and a guest testified that police officers returned to the appellant's home at approximately 1:00 and 4:00 p.m. that afternoon, and, at 4:00 p.m., without benefit of a warrant, searched through the home for evidence. During the officers' search, appellant's trial counsel arrived, and secured compliance with his request that the officers leave the home if they did not have a search warrant. The following day, however, officers returned with a search warrant, and seized an army jacket, gloves, shirt, and head gear, which were on the floor of the appel-

lant's basement. Evidence was also introduced concerning the appellant's fingerprints which were taken from the telephone booth in which Cobb observed the robber standing.

The appellant testified that at 3:00 a.m. on the morning of the robbery, he and Cox returned to his home after a night on the town. He stated that he left Cox there, and traveled to a bar known as The Pink Pussy in Dunbar, arriving at about 4:30 a.m. After spending around an hour at this establishment, the appellant testified that he returned home, arriving at 7:30 a.m. in an intoxicated condition. He stated that his wife woke him at about 8:15 a.m., and instructed him to prepare to report for training at the Armory. As he was dressing, the appellant testified that he looked outside for his car, but discovered it was missing. Eventually, around 8:40 a.m., Cox returned with his car, according to the appellant, and he and Cox traveled to the Armory, where he reported for duty at approximately 9:00 a.m.

The appellant's wife testified that she did not see her husband from 2:30 a.m., when she was informed he was going to Charleston, until 7:30 a.m., when he returned. She stated, however, that Cox remained at the house from the time her husband left for Charleston at least until 5:30 a.m. when she saw him sleeping on the couch on a trip to the bathroom, but had departed sometime during the night and was gone when she woke at 8:00 a.m. She testified that the appellant was dressed in civilian attire when he left the house at 8:40 a.m. to report to the Armory, after Cox arrived with his car which he had apparently taken after her husband's arrival at 7:30 a.m.

Four other witnesses testified on the appellant's behalf. Two testified that they saw the appellant and Cox together at a bar known as the Nite Flight until about 2:30 a.m. on the morning of the robbery. The appellant's sergeant testified that he arrived at the Armory between 8:50 and 9:00 a.m. that morning, accompanied by Cox. Finally, another witness corroborated the appellant's wife's testimony concerning

the search of the basement on Sunday afternoon.

## I

■ The appellant's first assignment of error is the trial court's failure to grant his motion for a continuance filed three days prior to trial which alleged inadequate opportunity to prepare; inability to locate a turnpike tolltaker who recognized the appellant as he was coming into Charleston on the morning of the robbery; failure to receive a requested bill of particulars until four days before trial; lack of prior knowledge of Cox's plea agreement; and, competing federal court obligations of his attorney. The standard of review with respect to determinations regarding motions for continuance is well established. As this Court stated in Syllabus Point 1 of *State v. Jones,* 84 W.Va. 85, 99 S.E. 271 (1919):

> The granting of a continuance is a matter within the sound discretion of the trial court, though subject to review, and the refusal thereof is not ground for reversal unless it is made to appear that the court abused its discretion, and that its refusal has worked injury and prejudice to the rights of the party in whose behalf the motion was made.[1]

■ Careful review of the record in this proceeding reveals no abuse of discretion with regard to the trial court's refusal to grant the appellant's motion for continuance. First, with respect to an opportunity for adequate preparation, this Court held in Syllabus Point 2 of *State ex rel. West Virginia Pittsburgh Coal Co. v. Eno,* 135 W.Va. 473, 63 S.E.2d 845 (1951), that, "The right guaranteed by State and Federal Constitutions to a person charged with a criminal violation to have effective assistance of counsel, cannot be abrogated by denying counsel, if timely employed, sufficient time to adequately prepare for trial."[2] *See also State v. Demastus,* 165 W.Va. 572, 577, 270 S.E.2d 649, 653–54 (W.Va.1980) ("The Constitutions of this state and the United States guarantee a defendant a reasonable time to prepare for trial. . . ."). Trial counsel in this case had represented the appellant for almost seven months prior to trial and had previously secured a continuance two months earlier. Certainly, trial counsel was afforded a "reasonable time to prepare for trial." Second, with respect to the absence of the tolltaker, this Court has frequently observed that:

> A motion for a continuance based on the absence of a witness is addressed to the sound discretion of the court, and it must be shown to the satisfaction of the court that the witness is material, and that due diligence has been used to obtain his attendance, and that his evidence would not be cumulative.

Syl. pt. 1, *State v. Bridgeman,* 88 W.Va. 231, 106 S.E. 708 (1921).[3] Trial counsel in

1. *See also* Syl. pt. 2, *State v. Trail,* 174 W.Va. 656, 328 S.E.2d 671 (1985); Syl. pt. 1, *State v. Angel,* 173 W.Va. 620, 319 S.E.2d 388 (1984); Syl. pt. 2, *State v. Hodges,* 172 W.Va. 322, 305 S.E.2d 278 (1983); Syl. pt. 8, *State v. Flint,* 171 W.Va. 676, 301 S.E.2d 765 (1983); Syl. pt. 2, *State ex rel. Shorter v. Hey,* 170 W.Va. 249, 294 S.E.2d 51 (1981); Syl. pt. 1, *State v. Cunningham,* 170 W.Va. 119, 290 S.E.2d 256 (1981); Syl. pt. 2, *State v. Bush,* 163 W.Va. 168, 255 S.E.2d 539 (1979); Syl. pt. 4, *State v. Milam,* 159 W.Va. 691, 226 S.E.2d 433 (1976); Syl. pt. 1, *State v. Chaffin,* 156 W.Va. 264, 192 S.E.2d 728 (1972); Syl. pt. 1, *State v. Tapp,* 153 W.Va. 759, 172 S.E.2d 583 (1970); Syl. pt. 7, *State v. Nuckols,* 152 W.Va. 736, 166 S.E.2d 3 (1968); Syl. pt. 2, *State v. Riley,* 151 W.Va. 364, 151 S.E.2d 308 (1966); Syl. pt. 6, *State v. Pietranton,* 140 W.Va. 444, 84 S.E.2d 774 (1955); Syl. pt. 1, *State v. Simmons,* 130 W.Va. 33, 42 S.E.2d 827 (1947); Syl. pt. 1, *State v. Padgett,* 93 W.Va. 623, 117 S.E. 493 (1923); Syl. pt. 3, *State v. Lutz,* 88 W.Va. 502, 107 S.E. 187 (1921); Syl. pt. 2, *State*

*v. Alie,* 82 W.Va. 601, 96 S.E. 1011 (1918); Syl. pt. 2, *State v. Swain,* 81 W.Va. 278, 94 S.E. 142 (1917); Syl. pt. 1, *State v. Angelina,* 73 W.Va. 146, 80 S.E. 141 (1913); Syl. pt. 7, *State v. Harrison,* 36 W.Va. 729, 15 S.E. 982 (1892); *State v. Betsall,* 11 W.Va. 703 (1877).

2. *See also* Syl., *State ex rel. Rogers v. Casey,* 166 W.Va. 179, 273 S.E.2d 356 (1980); Syl. pt. 1, *State v. Bush, supra* note 1; Syl. pt. 3, *Wilhelm v. Whyte,* 161 W.Va. 67, 239 S.E.2d 735 (1977).

3. *See also* Syl. pt. 3, *State v. Vance,* 168 W.Va. 666, 285 S.E.2d 437 (1981); Syl. pt. 1, *State v. Chaffin, supra* note 1; Syl. pt. 2, *State v. Burdette,* 135 W.Va. 312, 63 S.E.2d 69 (1951); Syl. pt. 2, *State v. Simmons, supra* note 1; Syl. pt. 2, *State v. Lucas,* 129 W.Va. 324, 40 S.E.2d 817 (1946); Syl. pt. 2, *State v. Whitecotten,* 101 W.Va. 492, 133 S.E. 106 (1926); Syl. pt. 4, *State v. Wisman,* 94 W.Va. 224, 118 S.E. 139 (1923); Syl. pt. 3, *State v. Lutz, supra* note 1; Syl. pt. 2, *State v. Jones, supra;* Syl. pt. 1, *State v. Duffy,* 75 W.Va. 299, 83 S.E. 990 (1914).

this case gave no indication to the trial court with regard to what efforts had been made to secure the attendance of this witness. Furthermore, the tolltaker's testimony would not have provided the appellant with an alibi for the time of the robbery anyway, but would have served only to undermine his alleged accomplice's testimony. Third, with respect to the late production of the bill of particulars and information concerning Cox's plea agreement, this Court noted in *State v. Schrader,* 172 W.Va. 1, 302 S.E.2d 70, 72 (1982), "Given [the] absence of even alleged harm caused by the late production, we cannot say that the trial court erred in denying the appellant's motion for a continuance. *See Wilhelm v. Whyte,* 161 W.Va. 67, 239 S.E.2d 735 (1977)." In the present action, no specific allegation of harm was made with respect to either the bill or particulars or the information concerning Cox's plea agreement. Finally, with respect to trial counsel's federal court obligations, it has been noted that, "[T]he question of granting a continuance because counsel for the accused is engaged in another court in the trial of a case rests largely in the sound judicial discretion of the trial court, whose ruling will be distrubed on appeal only when it is shown that the discretion has been abused." 17 Am.Jur.2d *Continuance* § 37, at 161 (1964); *see also* 17 C.J.S. *Continuances* § 38, at 417 (1963); *Blake v. West Virginia Insurance Co.,* 111 W.Va. 245, 247, 161 S.E. 32, 33 (1931) ("We are in accord with these general rules respecting postponements and continuances."). In the instant proceeding, accommodations were made on two occasions during the appellant's trial to permit his counsel's attendance in federal court at unspecified hearings. Accordingly, we conclude that the trial court's refusal to grant appellant another continuance did not constitute an abuse of discretion.

## II

The appellant's second assignment of error is the trial court's failure to suppress, as " 'fruit of the poisonous tree,' clothing seized from his home pursuant to a search warrant obtained following a warrantless search of the premises." *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).[4] Unquestionably, as this Court held in Syllabus Point 2 of *State v. Stone,* 165 W.Va. 266, 268 S.E.2d 50 (W.Va.1980), "Property observed during an illegal or improper search cannot be subsequently seized pursuant to a lawful search warrant which was based solely upon observations made during the illegal search." The State's response, however, is that because the officer whose affidavit formed the basis for the issuance of the search warrant had no knowledge of the alleged warrantless search, there was no "causal link" between the initial search and the issuance of the warrant, rendering the "poisonous tree" doctrine inapplicable.

The United States Supreme Court observed in *Wong Sun v. United States,* 371 U.S. at 487–88, 83 S.Ct. at 417, 9 L.Ed.2d at 455, that:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which the instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Maguire, Evidence of Guilt, 221 (1959).

For example, as this Court noted in Syllabus Point 2 of *State v. Hawkins,* 167 W.Va. 473, 280 S.E.2d 222 (1981), the exclusionary rule has no application where the evidence sought to be introduced has an "independent source;"[5] where the connection be-

---

**4.** *See also State v. Hilliard,* 173 W.Va. 456, 318 S.E.2d 35, 38 (1983); *State v. Aldridge,* 172 W.Va. 218, 304 S.E.2d 671, 673 (1983); *State v. Winston,* 170 W.Va. 555, 295 S.E.2d 46, 47 n. 3 (1982); *State v. Stone,* 165 W.Va. 266, 271–73, 268 S.E.2d 50, 54 (1980); *State ex rel. Williams v. Narick,* 164 W.Va. 632, 633 n.2, 264 S.E.2d

851, 853 n.2 (1980); Syl. pt. 3, *State v. Williams,* 162 W.Va. 309, 249 S.E.2d 758 (1978).

**5.** *See Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319, 321–22 (1920); *State v. Peacher,* 167 W.Va. 540, 280 S.E.2d 559, 580–81 (1981).

tween the unconstitutional police misconduct and the discovery of the challenged evidence is "so attenuated as to dissipate the taint" of the original illegality;[6] or, where the evidence would have been "inevitably discovered."[7]

 In the instant proceeding, the police officer's affidavit, containing absolutely no indicia of the existence of a previous search, corroborated his testimony that he was totally unaware of any search that had allegedly taken place on the date of the robbery. Absolutely no link was established by the appellant between the search and the warrant which raised even a possibility of "exploitation" of the initial search by the police. In Syllabus Point 9 of *State v. Peacher, supra,* this Court held that:

> An affidavit in support of an application for a search warrant which contains information that antedates, and is totally independent of, information learned from an unconstitutional search, may still be the basis upon which a valid search warrant may issue, if the information in the affidavit, excluding that information attributable to the unconstitutional search, is sufficient to justify a finding of probable cause.

Therefore, we find no error in the trial court's failure to suppress evidence seized pursuant to the warrant.

### III

 The appellant's third assignment of error is the trial court's refusal to suppress an in-court identification by Cynthia Applegate, who participated in an allegedly unconstitutional pretrial identification procedure. We must first address the suggestiveness of the procedure utilized in this case. As this Court held in Syllabus Point 4 of *State v. Harless,* 168 W.Va. 707, 285 S.E.2d 461 (1981), "A pretrial identification by photograph will be set aside if the pho-

tographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification."[8] One aspect of this inquiry was expressed in Syllabus Point 6 of *Harless:*

> Most courts have concluded that a photographic array will not be deemed excessively suggestive as long as it contains some photographs that are fairly representative of the defendant's physical features. The fact that some of the photographs are dissimilar to the defendant's appearance will not taint the entire array.[9]

 Two aspects of the identification procedure used in this case combine to have created a substantial likelihood of misidentification. First, it appears from the record that only the appellant and possibly one other individual participated in both the physical lineup and the photographic array. Second, despite the previous indication by the witness that the individual departing the 7-Eleven was wearing an "army green" jacket and hood, the appellant's photograph presented by police clearly depicted him in a uniform with the phrase "U.S. Army" emblazoned across one side of his military issue shirt, with his name apparently obliterated by a piece of masking tape across the other side.

Unlike the photographs depicting the appellant and one other individual, the other four photographs shown Applegate had been rather obviously drawn from police files, depicting individuals who more than likely would have been unavailable for the lineup. The witness was unable to identify the appellant at the physical lineup despite his being paraded back and forth several times. There is a distinct possibility that when the witness chose the appellant's photograph from the array, she was mistakenly identifying him not from the robbery, but rather from the prior lineup in which he had participated.

6. See *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307, 312 (1939); *State ex rel. Williams v. Narick,* 164 W.Va. 632, 264 S.E.2d at 855.

7. See *Nix v. Williams,* 467 U.S. 431, ——, 104 S.Ct. 2501, 2507–11, 81 L.Ed.2d 377, 388–90 (1984).

8. See also *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968); Syl. pt. 6, *State v. Watson,* 173 W.Va. 553, 318 S.E.2d 603 (1984).

9. See also Syl. pt. 3, *State v. Boykins,* 173 W.Va. 761, 320 S.E.2d 134 (1984); Syl. pt. 7, *State v. Watson, supra;* Syl. pt. 5, *State v. Buck,* 170 W.Va. 428, 294 S.E.2d 281 (1982).

Although the suggestiveness of depiction of the appellant in military attire was somewhat ameliorated by the photograph of another individual wearing what appears to be a surplus army jacket with the phrase "S. Army" visible and the "U." apparently obliterated by his collar, this individual bears little resemblance to the suspect described by the witness, having a large, bushy hairstyle that would have significantly interfered with the rather tight-fitting hood described as being worn by the suspect and a prominent goatee that was not described by the witness. Furthermore, a report of arrest form stapled to the back of this individual's photograph clearly indicates that it was taken on January 9, 1976, in connection with charges of threatening, interfering, and obstructing a police officer at the National Guard Armory in Beckley. This form also contained information regarding this individual's name, address, age, and his status as a student at Woodrow Wilson High School in Beckley.

Standing alone, each of these two circumstances may not have been impermissibly suggestive. Taken together, however, particularly in light of the questionable reliability of the basis for identification by the witness, we find that the identification procedure in this case created a substantial likelihood of misidentification.

 Inquiry with respect to the propriety of Applegate's in-court identification does not terminate with our determination that the photographic identification procedure utilized created a substantial likelihood of misidentification. As this Court stated in Syllabus Point 5 of *State v. Harless, supra,* "Even though there is an impermissibly suggestive pretrial photograph-ic array, an in-court identification could be made if the identifying witness has a reliable basis for making an identification of the defendant which basis is independent of the tainted pretrial identification procedures." [10] "This principle," observed this Court in *State v. Watson,* 173 W.Va. at 563, 318 S.E.2d at 613, "utilizes the totality of the circumstances to determine if the witness had an independent basis for his identification other than an impermissible out-of-court identification." [11] Specific guidance with respect to a determination of the adequacy of an independent basis for an in-court identification is found in the five factor test borrowed by the United States Supreme Court in *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977) from *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972), which this Court adopted in Syllabus Point 3 of *State v. Casdorph, supra:*

In determining whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification a court must look to the totality of the circumstances and determine whether the identification was reliable, even though the confrontation procedure was suggestive, with due regard given to such factors as the opportunity of the witnesses to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.[12]

10. *See also State v. Watson,* 173 W.Va. at 563, 318 S.E.2d at 613; Syl. pt. 3, *State v. Bennett,* 172 W.Va. 123, 304 S.E.2d 28 (1983); *State v. Boyd,* 167 W.Va. 385, 280 S.E.2d 669, 680 (1981); Syl. pt. 5, *State v. Slie,* 158 W.Va. 672, 213 S.E.2d 109 (1975); Syl. pt. 1, *State v. Stollings,* 158 W.Va. 585, 212 S.E.2d 745 (1975) *overruled on other grounds State v. McAboy,* 160 W.Va. 497, 498 n.1, 236 S.E.2d 431, 432 n. 1 (1977); Syl. pt. 3, *State v. Moore,* 158 W.Va. 576, 212 S.E.2d 608 (1975).

11. *See also State v. Casdorph,* 159 W.Va. 909, 916, 230 S.E.2d 476, 480 (1976).

12. *See also* Syl. pt. 2, *State v. Boykins, supra* note 9; *State v. Watson,* 173 W.Va. at 563 n. 12, 318 S.E.2d at 613 n.12; Syl. pt. 1, *State v. Audia,* 171 W.Va. 568, 301 S.E.2d 199 (1983); Syl. pt. 2, *State v. Gravely,* 171 W.Va. 428, 299 S.E.2d 375 (1982); Syl. pt. 1, *State v. Dye,* 171 W.Va. 361, 298 S.E.2d 898 (1982); Syl., *State v. Cox,* 171 W.Va. 50, 297 S.E.2d 825 (1982); Syl. pt. 2, *State v. Swiger,* 169 W.Va. 724, 289 S.E.2d 497 (1982); *State v. Harless,* 168 W.Va. 716, 285 S.E.2d at 467 n. 10; Syl. pt. 2, *State v. Morgan,* 168 W.Va. 506, 284 S.E.2d 924 (1981); Syl. pt. 4, *State v.*

First, with respect to Applegate's opportunity to observe the suspect, she testified that she was sitting in a friend's automobile at a traffic light when she noticed a black male of medium height, approximately one hundred feet away, walking from the 7-Eleven at a brisk pace, wearing a green face mask, sunglasses, a heavy green coat, and blue jeans. She testified that she observed this individual only briefly; that she never saw him fully in the face; and, that the only reason she noticed him at all was because he seemed heavily attired for the weather. Second, with respect to her degree of attention, the witness testified that while sitting at the traffic light with a friend, "I poked her [the driver] in the side and I said, 'Hey, look at this guy. Isn't he kind of funny?' You know, and she just laughed and glanced. She didn't really pay that much attention to him at all." Third, with respect to the accuracy of Applegate's previous description of the suspect, the focus was primarily upon his attire, and although she was able to relate a belief that he had some facial hair, she was extremely vague as to either its amount of location. Fourth, with respect to the level of certainty demonstrated by the witness at the photographic array, the record is silent, although her failure to identify the appellant at a physical lineup prior to the array indicates a rather significant degree of uncertainty. Finally, with respect to the lapse of time between observation and identification, only one day had passed.

In addition to these five factors, several other features of this proceeding are also relevant. First, the victim, who had the greatest opportunity to view the suspect, did not identify the appellant at trial. Second, the newsboy, who observed the suspect for several minutes at a closer distance than Applegate, was also unable to identify the appellant at trial. Finally, the reason for this lack of identification, the

suspect's attire, which was obviously designed to conceal his identify, was present throughout the entire episode, including the time when Applegate's observations were made.

■ Careful review of the totality of the circumstances presented in this proceeding compels our conclusion that the photographic identification procedure used in this case created a substantial likelihood for misidentification and that the identifying witness did not possess a sufficiently reliable independent basis, for in-court identification. Accordingly, the trial court committed reversible error when it overruled appellant's motion to suppress Applegate's in-court identification.

## IV

■ The appellant's fourth assignment of error is the trial court's admission of a store audit, conducted by managerial personnel, but signed by the victim, over an objection that, granted the victim's admitted lack of participation in the actual audit, it was inadmissible hearsay. Irrespective of the propriety of this admission, however, as this Court held in Syllabus Point 2 of *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979):

Where improper evidence of a non-constitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine

Carter, 168 W.Va. 90, 282 S.E.2d 277 (1981); Syl. pt. 4, *State v. Boyd, supra* note 10; Syl. pt. 4, *State v. Critzer,* 167 W.Va. 655, 280 S.E.2d 288 (1981); Syl. pt. 3, *State v. Hawkins,* 167 W.Va. 473, 280 S.E.2d 222 (1981); *State v. Payne,* 167 W.Va. 252, 280 S.E.2d 72, 79 (1981); Syl. pt. 1, *State v. Rickman,* 167 W.Va. 128, 278 S.E.2d 880

(1981); Syl. pt. 6, *State v. Demastus, supra;* Syl. pt. 2, *State v. Foddrell,* 165 W.Va. 540, 269 S.E.2d 854 (1980); *State v. Watson,* 164 W.Va. 642, 648, 264 S.E.2d 628, 632 (1980); Syl. pt. 3, *State v. McNeal,* 162 W.Va. 550, 251 S.E.2d 484 (1978); Syl. pt. 1, *State v. Williams,* 162 W.Va.

whether the error had any prejudicial effect on the jury.[13]

Under our aggravated robbery statute, West Virginia Code § 61-2-12 (1984 Replacement Vol.), the amount of money taken is irrelevant. The victim in the instant case testified that the robber emptied the bills from the cash register and petty cash drawer. Testimony with respect to the precise amount taken, even if hearsay, would have had no appreciable effect upon the jury, and, therefore, the admission of testimony concerning the result of the audit, if error, was harmless.

## V

The appellant's fifth assignment of error is the trial court's permission of extensive expert fingerprint testimony despite his stipulation to the prior use of a crime scene telephone booth from which the fingerprints were taken. As noted by the State, however, the appellant failed to raise any objection at trial to such testimony. In fact, with respect to the extensiveness of the fingerprint testimony, appellant's trial counsel stated that, "It's up to them [the prosecution]. We're not questioning that." This Court held in Syllabus Point 4 of *State v. Michael,* 141 W.Va. 1, 87 S.E.2d 595 (1955), that, "Error in the admission of testimony to which no objection was made will not be considered by this Court on appeal or writ of error, but

will be treated as waived."[14] Therefore, we find no merit in the appellant's fifth assignment of error.

## VI

The appellant's sixth assignment of error is allegedly burdensome limitation of cross-examination by defense counsel. He complains, however, of but one instance in which the trial court sustained the prosecution's objection to defense counsel's question as repetitive, but overruled defense counsel's repetitiveness objection to a question posed by the prosecutor. As this Court held in Syllabus Point 4 of *State v. Carduff,* 142 W.Va. 18, 93 S.E.2d 502 (1956):

> The extent of cross-examination of a witness is a matter within the sound discretion of the trial court; and in the exercise of such discretion, in excluding or permitting questions on cross-examination, its action is not reviewable except in case of manifest abuse or injustice.[15]

Careful review of the record in this proceeding reveals no abuse of discretion with respect to the scope of cross-examination allowed defense counsel.

## VII

The seventh assignment of error raised by the appellant concerns the trial court's refusal to permit defense counsel's

348, 249 S.E.2d 752 (1978); Syl. pt. 1, *State v. Kennedy,* 162 W.Va. 244, 249 S.E.2d 188 (1978).

**13.** *See also* Syl. pt. 12, *State v. McFarland,* 175 W.Va. 205, 332 S.E.2d 217 (1985); Syl. pt. 11, *State v. Gum,* 172 W.Va. 534, 309 S.E.2d 32 (1983); Syl. pt. 4, *State v. Tanner,* 171 W.Va. 529, 301 S.E.2d 160 (1982); Syl. pt. 3, *State v. Church,* 168 W.Va. 408, 284 S.E.2d 897 (1981); *State v. White,* 167 W.Va. 374, 280 S.E.2d 114, 120 (1981); Syl. pt. 3, *State v. Payne, supra* note 12; *State v. Rowe,* 163 W.Va. 593, 601 n. 3, 259 S.E.2d 26, 31 n. 3 (1979); *State v. Fraley,* 163 W.Va. 542, 545–46, 258 S.E.2d 129, 131 (1979).

**14.** *See also Maxey v. Bordenkircher,* 175 W.Va. 49, 330 S.E.2d 859, 861–62 (1985); Syl. pt. 2, *State v. Wyant,* 174 W.Va. 567, 328 S.E.2d 174 (1985); Syl. pt. 1, *State v. Smith,* 169 W.Va. 750, 289 S.E.2d 478 (1982); Syl. pt. 1, *State v. Baker,* 169 W.Va. 357, 287 S.E.2d 497 (1982); *State v. Ketchum,* 169 W.Va. 9, 289 S.E.2d 657, 660 (1981); *State v. Moran,* 168 W.Va. 688, 285 S.E.2d 450, 452 (1981); *State v. Craft,* 165 W.Va.

741, 759, 272 S.E.2d 46, 56 (1980); *State v. Clawson,* 165 W.Va. 588, 619, 270 S.E.2d 659, 677 (1980); *State v. Burton,* 163 W.Va. 40, 58, 254 S.E.2d 129, 140 (1979); *State v. Starkey,* 161 W.Va. 517, 530, 244 S.E.2d 219, 227 (1978); *State v. McGee,* 160 W.Va. 1, 6–7, 230 S.E.2d 832, 836 (1976), *overruled on other grounds State v. McAboy,* 160 W.Va. 497, 498 n. 1, 236 S.E.2d 431, 432 n. 1 (1977); Syl. pt. 17, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974); Syl. pt. 2, *State v. Mahramus,* 157 W.Va. 175, 200 S.E.2d 357 (1973); Syl. pt. 4, *State v. Knotts,* 156 W.Va. 748, 197 S.E.2d 93 (1973); *State v. Pietranton,* 137 W.Va. at 492, 72 S.E.2d at 625; *State v. Mayle,* 136 W.Va. 936, 942, 69 S.E.2d 212, 215 (1952); Syl. pt. 4, *State v. Files,* 125 W.Va. 243, 24 S.E.2d 233 (1943); Syl. pt. 7, *State v. Driver,* 88 W.Va. 479, 107 S.E. 189 (1928).

**15.** *See also* Syl. pt. 10, *State v. Gum, supra* note 13; Syl., *State v. Wood,* 167 W.Va. 700, 280 S.E.2d 309 (1981); Syl. pt. 18, *Long v. City of Weirton,* 158 W.Va. 741, 214 S.E.2d 832 (1975); Syl. pt. 1, *State v. Charlot,* 157 W.Va. 994, 206

testimony regarding the warrantless search of the appellant's home on the day of the robbery. Specifically, the trial court sustained the prosecution's objection to defense counsel's inquiry of a visitor at the appellant's home at the time of the alleged warrantless search to the effect that, "Do you recall whether I asked them if they had a search warrant?" Granted our conclusion that evidence seized from the appellant's home pursuant to a search warrant was admissible irrespective of any previous warrantless search, the trial court's action, if erroneous, was harmless under Syllabus Point 2 of *State v. Atkins, supra.*

### VIII

The appellant's next assignment of error is the trial court's refusal to permit impeachment by prior felony convictions of the appellant's alleged accomplice, who testified against him pursuant to a plea arrangement. In *State v. McAboy,* 160 W.Va. at 508, 236 S.E.2d at 437, this Court noted that whether prior convictions may be introduced to impeach the credibility of a witness other than the defendant in a criminal trial rests within the sound discretion of the trial court.[16] As the appellant candidly concedes, trial counsel's cross-examination of the alleged accomplice with respect to his prior convictions can best be described as "groping." Inadequate discovery on the part of trial counsel was the reason for this fumbling effort at impeachment of the alleged accomplice by prior convictions. Finally, in exasperation, the trial court stated, "[T]he Court directs you not to pursue that unless you've got some concrete evidence of a conviction of a felony. I'm going to allow you to show

that, but that's as far as you can go." Having no concrete evidence of apparently several felony convictions, the appellant's trial counsel immediately abandoned this line of questioning. Under these circumstances, we conclude that the trial court did not abuse its discretion with respect to the appellant's impeachment of his alleged accomplice through prior felony convictions.

### IX

The appellant's ninth assignment of error is the trial court's failure to direct a verdict of acquittal at the close of all the evidence. In Syllabus Point 1 of *State v. Fischer,* 158 W.Va. 72, 211 S.E.2d 666 (1974), we held that:

> "Upon motion to direct a verdict for the defendant, the evidence is to be viewed in light most favorable to prosecution. It is not necessary in appraising its sufficiency that the trial court or reviewing court be convinced beyond a reasonable doubt of the guilt of the defendant; the question is whether there is substantial evidence upon which a jury might justifiably find the defendant guilty beyond a reasonable doubt." *State v. West,* 153 W.Va. 325, 168 S.E.2d 716 (1969).[17]

The appellant's representations concerning the imperviousness of his alibi defense notwithstanding, when viewed in a light most favorable to the prosecution, substantial evidence was presented upon which a jury might well find proof of his guilt beyond a reasonable doubt. Therefore, we find this assignment to be without merit.

### X

The appellant's tenth assignment of error is the trial court's refusal to give a

---

S.E.2d 908 (1974); Syl. pt. 1, *State v. Wolfe,* 99 W.Va. 694, 129 S.E. 748 (1925).

16. *See also State v. Burton, supra* note 14; *State v. Justice,* 135 W.Va. 852, 863, 65 S.E.2d 743, 749 (1951); Syl. pt. 3, *State v. Lucas, supra* note 3; Syl. pt. 1, *State v. Crummit,* 123 W.Va. 36, 13 S.E.2d 757 (1941); *State v. Price,* 113 W.Va. 326, 334, 167 S.E. 862, 866 (1933); *State v. Worthington,* 109 W.Va. 449, 450, 155 S.E. 313, 314 (1930); *State v. Porter,* 98 W.Va. 390, 403 127 S.E. 386, 392 (1925); Syl. pt. 2, *State v. Walker,* 92 W.Va. 499, 115 S.E. 443 (1922); *State v. Prater,* 52 W.Va. 132, 151, 43 S.E. 230, 237 (1903); Syl. pt. 4, *State v. Hill,* 52 W.Va. 296, 43 S.E. 160 (1903).

17. *See also* Syl. pt. 16, *State v. Cook,* 175 W.Va. 185, 332 S.E.2d 147 (1985); Syl. pt. 1, *State v. Gum, supra* note 13; Syl. pt. 4, *State v. Oldaker,* 172 W.Va. 258, 304 S.E.2d 843 (1983); Syl. pt. 1, *State v. Horton,* 170 W.Va. 395, 294 S.E.2d 248 (1982); Syl. pt. 5, *State v. Woods,* 169 W.Va. 767, 289 S.E.2d 500 (1982); *State v. Starkey,* 161 W.Va. at 518, 244 S.E.2d at 221; Syl. pt. 4, *State v. Johnson,* 159 W.Va. 682, 226 S.E.2d 442 (1976) *overruled on other grounds State ex rel. White v. Mohn,* 168 W.Va. 211, 283 S.E.2d 914, 915 n. 2 (1981); *State v. Woods,* 155 W.Va. 344, 349, 184 S.E.2d 130, 134 (1971) *overruled on other*

motive instruction and failure to give an alibi instruction.

■ The appellant's motive instruction, which was rejected by the trial court, attempted to establish motive as an element of the crime of aggravated robbery. As this Court observed in Syllabus Point 5 of *State v. Lemon*, 84 W.Va. 25, 99 S.E. 263 (1919), however, "While it is permissible to prove the motive which prompted the commission of crime, the failure of the state to discover and prove any motive therefor is no evidence of the innocence of the accused. Motive constitutes no element of the crime itself." To this Court, the motive which prompts robbery is self-evident. It is well settled that, "Instructions in a criminal case that are confusing, misleading, or incorrectly state the law should not be given." Syl. pt. 3, *State v. Bolling*, 162 W.Va. 103, 246 S.E.2d 631 (1978).[18] The trial court was correct in refusing to give the appellant's motive instruction.

The appellant also objects to the trial court's failure to give an alibi instruction despite trial counsel's failure to request such instruction. We note that some courts have held that where the sole defense of alibi, presented in a criminal prosecution, has been supported by corroborating testimony, the trial court has an affirmative duty, even in the absence of a request, to properly charge the jury on this issue. *See generally* Annot., 72 A.L.R.3d 547 (1976). Granted our conclusion, however, that commission of the other trial error necessitates reversal, we refrain from making a determination on this issue except to note our displeasure with trial counsel's failure to request an alibi instruc-

tion. It seems that assignment of the fruit of arguably ineffective assistance of counsel is often employed as a diversionary technique designed to deflect judicial scrutiny of the quality of legal representation rendered by certain practitioners in criminal matters.

## XI

The appellant's eleventh assignment of error is the trial court's failure to submit a verdict form to the jury. The trial court instructed the jury that, "[U]nder the indictment in this case, if warranted, by the evidence, you may find one of the following verdicts, to-wit: (1) guilty of aggravated robbery; (2) guilty of unaggravated robbery; (3) not guilty." No verdict form was given to the jury. When the jury returned to the courtroom following completion of its deliberations, the foreman read the verdict, "Guilty as charged," from a piece of paper which he had signed. Following a poll of the jurors, the trial court instructed that the verdict be transposed onto the original indictment and read by the clerk, who stated, "We the jury find the defendant, Larry Darnell Davis, guilty as charged in the within indictment." The members of the jury stated their affirmance of this transcription, and the indictment was signed by the foreman.

■ Obviously, the provision of a verdict form would have avoided the confusion inherent in the procedure followed by the trial court in this case. In Syllabus Point 2 of *State v. Arbruzino*, 67 W.Va. 534, 68 S.E. 269 (1910), however, this Court held, "The verdict of a jury in a criminal case should be read in connection with the

*grounds State v. McAboy*, 160 W.Va. 497, 498 n. 1, 236 S.E.2d 431, 432 n. 1 (1977).

18. *See also* Syl. pt. 2, *State v. Saunders*, 175 W.Va. 16, 330 S.E.2d 674 (1985); *State v. Lambert*, 173 W.Va. 60, 312 S.E.2d 31 (1984); Syl. pt. 4, *State v. Simmons*, 172 W.Va. 590, 309 S.E.2d 89 (1983); *State v. Wilcox*, 169 W.Va. 142, 286 S.E.2d 257, 261 (1982); *State v. Harris*, 169 W.Va. 150, 286 S.E.2d 251 (1982); *State v. Knight*, 168 W.Va. 615, 285 S.E.2d 401, 407–08 (1981); Syl. pt. 1, *State v. Romine*, 166 W.Va. 135, 272 S.E.2d 680 (1980); *State v. Butcher*, 165

W.Va. 522, 528, 270 S.E.2d 156, 160 (1980); *State v. McClure*, 163 W.Va. 33, 37, 253 S.E.2d 555, 557–58 (1979); Syl. pt. 3, *State v. Belcher*, 161 W.Va. 660, 245 S.E.2d 161 (1978); Syl. pt. 3, *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975); Syl. pt. 6, *State v. McArdle*, 156 W.Va. 409, 194 S.E.2d 174 (1973); Syl. pt. 2, *State v. Collins*, 154 W.Va. 771, 180 S.E.2d 54 (1971); Syl. pt. 6, *State v. Vance*, 146 W.Va. 925, 124 S.E.2d 252 (1962) *overruled on other grounds* Syl. pt. 6, *State ex rel. Grob v. Blair*, 158 W.Va. 647, 214 S.E.2d 330 (1975); Syl. pt. 4, *State v. Travis*, 139 W.Va. 363, 81 S.E.2d 678 (1954);

indictment, and, if the meaning of the verdict is thus made certain, it is sufficiently definite."[19] The indictment in the instant case clearly charged the appellant with aggravated robbery. The jury's verdict, "Guilty as charged," was transposed onto the indictment, affirmed by the jury, and signed by the foreman. Therefore, the verdict in this proceeding was sufficiently definite.

## XII

The State concedes the validity of the appellant's twelfth assignment of error, the trial court's failure to consider probation as an alternative to imprisonment. The appellant was convicted six weeks after the effective date of amendment to West Virginia Code § 62–12–2(c)(1) (1984 Replacement Vol.), which provides, in relevant part, that:

> The existence of any fact which would make an person ineligible for probation ... because of the commission or attempted commission of a felony with the use, presentment or brandishing of a firearm shall not be applicable unless such fact is clearly stated and included in the indictment or presentment by which such person is charged and is ... (ii) found by the jury, if the matter is tried before a jury, upon submitting to such jury a special interrogatory for such purpose....

The indictment in the present action did not allege use of a firearm and no special interrogatory was submitted to the jury for such purpose. The trial court, however, apparently unaware of the amendments, reluctantly found the appellant ineligible for probation.

■■■ Under West Virginia Code § 62–12–2(c)(1) (1984 Replacement Vol.), the commission or attempted commission of a felony with the use, presentment, or brandishment of a firearm must be clearly stated in the indictment or presentment by which a person is charged and must be found by the jury upon submission of a special interrogatory for such purpose in order to make any person ineligible for probation upon conviction in a jury trial of a felony prosecution. Obviously, because neither of the statutory criteria were met in this case, the trial court erred by failing to consider probation as an alternative to imprisonment due to the alleged use of a firearm by the appellant.

## XIII

The appellant's final assignment of error is alleged unconstitutionally ineffective assistance of trial counsel. Specifically, the appellant complains concerning trial counsel's failure to familiarize himself with the requirements of West Virginia Code § 62–12–2(c)(1) (1984 Replacement Vol.) with respect to his eligibility for probation; to make any pretrial discovery request of the prosecution; to make any pretrial suppression motion with respect to evidence seized from his home; to present important suppression evidence at suppression hearings which were held at trial; to obtain his alleged accomplice's felony record prior to trial; to subpoena key witnesses for trial; and, to request an alibi instruction, his sole defense.

■■■ Our standard for ascertaining the constitutional sufficiency of legal representation in a criminal proceeding is set forth in Syllabus Point 19 of *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974), which provides that:

> In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned

Syl. pt. 12, *State v. Painter,* 135 W.Va. 106, 63 S.E.2d 86 (1951).

**19.** *See also* Syl. pt. 1, *Crawford v. Coiner,* 152 W.Va. 411, 163 S.E.2d 793 (1968); Syl. pt. 2, *State v. Runnion,* 122 W.Va. 134, 7 S.E.2d 648 (1940); *State v. Frey,* 92 W.Va. 323, 326, 114 S.E.

681, 682 (1922); Syl. pt. 2, *State v. Brown,* 91 W.Va. 187, 112 S.E. 408 (1922); *State v. Vineyard,* 85 W.Va. 293, 295, 101 S.E. 440, 443 (1919); Syl. pt. 1, *State v. Moneypenny,* 81 W.Va. 362, 94 S.E. 540 (1917); Syl. pt. 1, *Moody v. State,* 1 W.Va. 337 (1866).

counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case, will be regarded as harmless error.[20]

Confronted with several obviously prejudicial omissions on the part of trial counsel, the State offers that a hearing pursuant to an application for writ of habeas corpus would provide a more appropriate vehicle for examination of the effectiveness of counsel. Having concluded that commission of other trial error necessities reversal, we refrain from making a determination on this issue.

## XIV

In conclusion, due to the trial court's allowance of an in-court identification by a witness who had no reliable basis for such identification independent of a pretrial photographic identification procedure which created a substantial likelihood of misidentification, we must reverse the appellant's conviction and remand his case for retrial.

Reversed and remanded.

**20.** *See also* Syl. pt. 1, *State v. Swiger,* 175 W.Va. 578, 336 S.E.2d 541 (1985); Syl. pt. 1, *State v. Blevins,* 174 W.Va. 636, 328 S.E.2d 510 (1985); Syl. pt. 1, *Tucker v. Holland,* 174 W.Va. 409, 327 S.E.2d 388 (1985); Syl. pt. 3, *State v. Cabalceta,* 174 W.Va. 240, 324 S.E.2d 383 (1984); Syl. pt. 1, *State v. Tadder,* 173 W.Va. 187, 313 S.E.2d 667 (1984); Syl. pt. 2, *State v. Bogard,* 173 W.Va. 118, 312 S.E.2d 782 (1984); Syl. pt. 1, *State v. Cecil,* 173 W.Va. 27, 311 S.E.2d 144 (1983); Syl. pt. 2, *Carter v. Taylor,* 172 W.Va. 696, 310 S.E.2d 213 (1983); Syl. pt. 1, *State v. Bias,* 171 W.Va. 687, 301 S.E.2d 776 (1983); Syl. pt. 4, *State v. Mullins,* 171 W.Va. 542, 301 S.E.2d 173 (1983); Syl. pt. 3, *State v. Jacobs,* 171 W.Va. 300, 298 S.E.2d 836 (1982); Syl. pt. 6, *State v. Riser,* 170 W.Va. 473, 294 S.E.2d 461 (1982); Syl. pt. 4,

*State v. Baker, supra* note 14; Syl. pt. 6, *State v. Hatfield,* 169 W.Va. 191, 286 S.E.2d 402 (1982); Syl. pt. 4, *State v. Church, supra* note 13; Syl. pt. 1, *Carrico v. Griffith,* 165 W.Va. 812, 272 S.E.2d 235 (1980); Syl. pt. 3, *State v. Foddrell, supra* note 12; Syl. pt. 2, *Scott v. Mohn,* 165 W.Va. 393, 268 S.E.2d 117 (1980); *State v. Watson,* 164 W.Va. at 649, 264 S.E.2d at 632–33; Syl. pt. 2, *State v. Bradley,* 164 W.Va. 68, 260 S.E.2d 830 (1979); *State v. Bush,* 163 W.Va. at 175, 255 S.E.2d at 543; Syl. pt. 1, *Cannellas v. McKenzie,* 160 W.Va. 431, 236 S.E.2d 327 (1977); Syl. pt. 1, *State ex rel. Wine v. Bordenkircher,* 160 W.Va. 27, 230 S.E.2d 747 (1976); Syl. pt. 1, *Carter v. Bordenkircher,* 159 W.Va. 717, 226 S.E.2d 711 (1976).